23526. HOSPITAL AUTHORITY OF THE CITY OF ST. MARYS v. EASON, Administrator.

ARGUED JULY 11, 1966—DECIDED SEPTEMBER 8, 1966—
REHEARING DENIED SEPTEMBER 23, 1966.

*Bennet, Gilbert, Gilbert & Whittle, Wallace E. Harrell,* for appellant.

*Nathan, Hutto & Lee, J. S. Hutto,* for appellee.

GRICE, Justice.  A suit by a patient, claiming that he was burned as the result of negligence of a hospital, brought about the rulings complained of here:  The action was filed by James Eason against Hospital Authority of the City of St. Marys, Camden County, known as The Gilman Hospital, in the Superior Court of Camden County.  Following the trial the patient died and his administrator was substituted as a party. After a verdict and judgment in favor of the patient, the hospital moved for judgment notwithstanding the verdict or new trial.  Upon the denial of this motion it appealed to the Court of Appeals, which affirmed. *Hospital Authority of the City of St. Marys v. Eason,* 113 Ga. App. 401 (148 SE2d 499).

The hospital, in its application for certiorari, assigned as error the following rulings made by the Court of Appeals: (1) that the evidence supported the verdict and hence the trial court properly denied the hospital's motion above referred to; (2) that the trial court's charge on res ipsa loquitur was authorized; (3) that the charge was not erroneous in failing to instruct as to the duty of the patient to exercise ordinary care for his own safety or as to comparative negligence; and (4) that the hospital waived its right to insist on a mistrial on account of remarks by the patient's counsel in his closing argument to the jury.

The patient's petition alleged, in substance, that he was admitted to the hospital as a patient; that he had a speech impediment, was paralyzed, and could not safely remove a pipe from his mouth; that the hospital knew of his condition; that an unidentified hospital attendant lit his pipe and negligently left him alone while he was smoking it in bed; that, due to his condition as aforesaid, the pipe fell from his mouth; and that the pipe set fire to his bed causing him to be burned.

The hospital denied the material allegations of the petition, except for the plaintiff's status as a patient.

The evidence produced upon the trial was essentially that which follows.

The plaintiff, about two days before the fire, was admitted to the hospital as a pay patient and was placed in a room without another occupant. He was hospitalized for a heart condition, and was paralyzed on his right side and vocally. The testimony was in conflict as to whether he could hold his pipe without assistance. Upon his admission the hospital was notified of his condition and that he could not safely be left alone while smoking in bed. Instructions were given by the hospital to the nurses that he was not to be left alone while doing so.

About the time of admission his family provided a pipe, tobacco and matches for his smoking. The patient used these while nurses on general duty were with him and while company was in his room during visiting hours.

When not thus in use the pipe, tobacco and matches were removed from him and placed on the night stand of the unoccupied bed. The patient was confined to his bed, with raised guardrails, and could not get out and walk across the room to obtain such articles. His bed was equipped with a bed light.

At about noon on the day the fire occurred, a minister's visit, during authorized hours, was terminated by a nurse announcing that she had to bathe the patient. She removed the pipe from the patient's mouth and placed it on the night stand of the bed across the room as the minister left.

About five to ten minutes before the fire, two hospital attendants went into the patient's room for a short time to leave some ice. They testified that no one else was in the room, and one of them testified that when they left the door was open and some unidentified visitors were standing in the hall between the door of his room and that of an adjoining room. This was during visiting hours. There was no testimony, however, that anyone except hospital employees was in his room between the time of the minister's departure and the fire. Likewise, there was no testimony that there was not anyone except hospital employees in his room during that period.

The fire was observed about 2:50 p.m. by a visitor in a room across the hall. That visitor and hospital personnel immediately rushed into the room, tossed flaming sheets out into the hall, and extinguished the flames that had ignited portions of the

patient's pajamas. While in this room two nurses observed upon the floor, at an unspecified location, the patient's pipe and a box of matches. Upon being asked if the pipe was lit one testified, "I don't remember, I picked it up, it wasn't hot, it didn't burn me at the time." No description of the pipe, was given. The matches were not "Gilman Hospital matches," which were provided by it to those desiring them.

The patient sustained severe burns from the fire.

He did not testify at the trial and relied in the main upon cross examination of the hospital personnel for facts to establish negligence by the hospital.

■ The controlling question is whether there was sufficient evidence to raise an issue of negligence by the hospital for the jury to consider.

As to this issue it is well established that a hospital owes a duty to a pay patient to exercise such reasonable care in looking after and protecting the patient as his condition, known to the hospital through its agents and servants charged with the duty of looking after and supervising him, may require, but the hospital is not an insurer of the patient's safety. 26 Am. Jur. 595-596, Hospitals and Asylums, § 14; 41 CJS 349, Hospitals, § 8 (3). See for collection of Georgia cases, 12A Ga. Digest 239, Hospitals, § 7.

Here, the claim of negligence is predicated upon some hospital employee lighting the pipe and then leaving the patient unattended while smoking it, notwithstanding the hospital's knowledge of the patient's condition and the danger of leaving him unattended when smoking. It is not contended that the hospital should have prohibited the patient from smoking, or should have permitted it only when its employees, rather than visitors, were with him, or should have given him constant nursing care.

The patient sought to establish the foregoing claim by application of the doctrine of res ipsa loquitur, which has for its basis in this State, *Code* § 38-123, providing as follows: "In arriving at a verdict the jury, from facts proved, and sometimes from the absence of counter evidence, may infer the existence of other facts reasonably and logically consequent on those proved." This doctrine was first stated as such by our reviewing court

in *Chenall v. Palmer Brick Co.*, 117 Ga. 106 (43 SE 443). Since then it has been defined and applied many times. See in this connection, *Macon Coca-Cola Bottling Co. v. Chancey*, 216 Ga. 61 (114 SE2d 517).

In this situation mere proof that the bed was on fire, from undetermined origin, was not sufficient to invoke res ipsa loquitur. See in this connection, 65 CJS 1038, Negligence, § 220 (12); Prosser, Law of Torts (3rd Ed.), p. 220.

Rather, establishing such negligence depended upon proving: (1) that it was the pipe which set the bed afire, (2) that some hospital attendant lit the pipe and left him unattended while smoking it, and (3) that the pipe fell from his mouth as the result of his condition.

Thus, the patient's claim of negligence rests upon the pyramiding of inferences. There was no direct evidence that his bed was ignited by his pipe, rather than by some other cause such as smoking of visitors or malfunction of the lamp. The pipe was not hot when found. Neither was there any evidence that any of the hospital personnel lit the pipe and then left him unattended. There was testimony that hospital visitors were seen nearby in the hall during this period, and therefore it could be deduced that they had the opportunity to light his pipe, or that their smoking caused the fire. Nor was there any evidence that the pipe, if in his mouth, dropped from it because of his physical condition, instead of from his negligent mishandling. There was evidence that he could hold it in his mouth.

With regard to the negligence sought to be inferred here, *Miller v. Gerber Products Co.*, 207 Ga. 385 (62 SE2d 174) has a direct bearing. There, the issue was whether res ipsa loquitur was applicable so as to authorize an inference of negligence by the defendant in processing, packing and distributing its baby food. This court held (one Justice dissenting) that it was not.

In that case the plaintiff baby's mother testified that she bought a jar of the food from a retail store; that while she was feeding the baby the food it began to choke and gag; that the father found in the baby's mouth a piece of glass; that no chip of glass, or crack, was located in the jar. The father testified that he was with the wife when she bought the food and that the jar was

in the same condition when they arrived home. The defendant's plant manager in charge of packing this food testified as to the process, showing a high degree of diligence in seeing that no foreign ingredient such as glass got into any of the jars.

The *Miller* opinion pointed out that there was no direct evidence that the mother or father saw the glass in the jar, or any circumstance such as other pieces of glass in the jar, or that the jar was cracked, or that the glass came from the jar containing the food fed the baby. It further pointed out that there was no evidence as to whether the baby had been eating other food, or what it had been doing just prior to being fed the defendant's food, so as to eliminate the possibility that it placed the glass in its mouth before being fed this food.

That opinion then said: "For a jury to apply the doctrine of res ipsa loquitur in this case, they would have to draw two inferences: first, that the piece of glass found in the [baby's] mouth came from the [food] being fed to her by her mother; and second, that the glass was in the jar at the time the mother bought the jar of [food]. Under the provisions of *Code* § 38-123 . . . before the jury could arrive at the ultimate fact by inference of the existence of other facts, the facts inferred must be reasonably and logically consequent upon *proven facts*. In other words, the jury cannot assume the ultimate fact merely from other facts which are based upon an inference rather than upon proof." (P. 387.)

The opinion then set forth several rules, with citations, which govern here: that res ipsa loquitur should be applied with caution and only in extreme cases; that it is not applicable when there is an intermediary cause which produced or *could* produce the injury, or where there is direct unambiguous testimony as to the absence of negligence by the defendant, or where there is no fair inference that the defendant was negligent.

The opinion also stated that " . . . the circumstantial evidence on behalf of the plaintiff as to the source of the piece of glass is not a sufficient basis from which a fair inference could be drawn that the defendant was negligent" as to the glass jar, and that direction of the verdict was not error.

Returning to the facts of the instant case, with the principles

of the *Miller* decision, supra, in mind, we conclude that the pyramid of inferences relied upon here, to wit, (1) that the pipe set the bed afire, (2) that a hospital attendant lit the pipe and left the patient unattended while smoking it, and (3) that the pipe fell from his mouth as the result of his condition, are too uncertain and speculative to raise a presumption of negligence on the part of the hospital.

We hold that the evidence was not sufficient to apply this doctrine. Neither was there any other evidence to sustain a finding of negligence on the part of the defendant hospital. Its motion for judgment notwithstanding the verdict should have been granted.

■ In view of the ruling in Division 1, it is not necessary to consider the other assignments of error on the decision of the Court of Appeals.

*Judgment reversed. All the Justices concur.*