## 48334. ORKIN EXTERMINATING COMPANY INC. v. STEVENS.

HALL, Presiding Judge. This is a "termite case" in which Stevens, a homeowner, (hereinafter, "Stevens") received a jury verdict against Orkin Exterminating Co. Inc. (hereinafter, "Orkin") and Orkin appeals the overruling of its motions for directed verdict and judgment n. o. v.

The appeal presents the knotty question, not answerable in any fashion save that of case by case analysis, whether as between two private contracting parties a specific act or omission in the nature of a breach of contract may also constitute a tort.

The pleadings and trial evidence showed that on April 3, 1969, Stevens contracted with Orkin for control of subterranean termites in his home, and paid $259 for initial extermination services and the issuance of a "Guaranty." The contract was said to be extendable by the annual payment of $25 which would entitle Stevens to a re-inspection each December. Subsequent to Orkin's initial treatment and during the term of the Guaranty, Stevens' home became severely infested with subterranean termites appearing to originate from untreated portions of the house. From 1969 through 1972 termites swarmed at various times; Stevens made numerous telephone requests to Orkin's office in Athens, Georgia, for retreatment; and all requested retreatments were given.

Stevens then brought a *negligence* suit against Orkin to recover for new termite damage to portions of the house not involved in the initial termite infestation. At trial, Orkin presented no evidence. Throughout, Stevens' suit was declared to be in tort which was wholly consistent with his pleadings (and with his stance on this appeal.) Orkin moved for directed verdict on the ground that no breach was shown, no damages were recoverable under the contract, and notice to Orkin before suit was not given as required by the contract. The trial judge overruled those motions; the case went to the jury on charges of negligence in carrying out the terms of the contract; the jury gave a verdict for plaintiff; Orkin moved on the same grounds for judgment n. o. v.; this motion was denied and the appeal followed.

Turning to the provisions of the operative contract between the parties, the guaranty to be issued later to Stevens was designated on the front of his contract, as the "Lifetime Control" type, which was explained (but not set forth) on the back of the contract as

being a guaranty only of the application at no cost of additional treatments if reinfestation occurred. This description of the Guaranty stated that Orkin's liability was to be limited to such retreatment and would not encompass responsibility "for damages or repairs to the structure or contents." By way of contrast, though the fact is not otherwise applicable to this case, the back of the contract also described other types of guaranties including one designated "Special Total Protection Lifetime Subterranean Termite Guaranty." Under the description of that guaranty Orkin would assume responsibility up to a maximum of $100,000 for new damage to structure and contents caused by such termites after the initial treatment.

The actual guaranty document subsequently issued to Stevens provided as follows:

"Your Guarantee

In consideration of sums received and to be received for providing treatment for the above-stated wood destroying insect at the premises specified above, Orkin guarantees, subject to the Terms and Conditions appearing on the reverse side of this Guarantee and on the Service Order bearing the above-stated number:

To inspect the premises treated, as described in said Service Order.

To apply any necessary additional treatment to such premises, At No Extra Cost, if infestation of the above wood destroying insect is found in the premises during the period that this Guaranty remains in force. *This Guarantee is limited to retreatment only and in no way, implied or otherwise, covers damages and repairs to the structure or contents."* (Emphasis supplied.)

The "General Terms and Conditions" appearing on the back of the contract and on the back of the guaranty included these paragraphs:

"5. Any claim for breach of any Guaranty shall be made forthwith in writing to said Orkin Exterminating Inc., 2170 Piedmont Road, Atlanta, Georgia, 30324.

6. No suit shall lie hereunder unless the provisions of Paragraph 5 have been complied with and unless brought within one (1) year after the making of said written demand."

Though Stevens introduced the contract and guaranty into evidence and addresses argument here to the inapplicability or invalidity of the provisions therein concerning the limitation of damages and the requirement of notice before suit, nonetheless he emphasizes that this is a tort suit only. We will, therefore,

initially consider the case as one wholly in tort.

It is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of contract to avoid harming him. See, e.g., *E. & M. Construction Co. v. Bob,* 115 Ga. App. 127 (153 SE2d 641); *Rawls Bros. Co. v. Paul,* 115 Ga. App. 731 (155 SE2d 819). Such an independent harm may be found because of the relationship between the parties, or because of defendant's calling or because of the nature of the harm. See e. g., *The City & Suburban R. Co. of Savannah v. Brauss,* 70 Ga. 368 (duty of street railway company not wrongfully to eject passenger); *Floyd v. Morgan,* 106 Ga. App. 332 (127 SE2d 31) (duty not to provide an article represented to be safe and actually defective); *Tapley v. Youmans,* 95 Ga. App. 161 (97 SE2d 365) (relationship of landlord and sharecropper); *Orkin Exterminating Co. v. Wingate,* 84 Ga. App. 750 (67 SE2d 250) (duty not to spray flammable liquid around plaintiff's hot chimney, causing his house to burn, in carrying out an extermination contract); *Moody v. Martin Motor Co.,* 76 Ga. App. 456 (46 SE2d 197) (duty to perform safety-related auto repairs in nonnegligent manner).

However, not all breaches of contract are also independent torts: ". . . where defendant's negligence ends merely in non-performance of the contract and where defendant is not under any recognized duty to act apart from contract, the courts generally still see no duty to act affirmatively except the duty based on — and limited by — defendant's consent." 2 Harper and James, Torts, p. 1050, § 18.6. In those circumstances, an action in tort may not be maintained for what is a mere breach through non-action or through ineffective performance (which is the same thing) of a contract duty — the duty must arise independent of contract to constitute a tort. e. g., *Louisville & Nashville R. Co. v. Spinks,* 104 Ga. 692 (30 SE 968). Even this formulation, however, is limited by the rule that where nonperformance or inaction is of such a type as to create an unreasonable risk of harm to others, even nonperformance of a contract duty — nonfeasance — may give rise to a tort action. See, *Moody v. Martin Motor Co.,* supra, accord, 2 Harper and James, Torts, pp. 1015-1027, §§ 18.1 and 18.2. Finally, where the breach of contract is not also a tort, limitations of liability for breach will usually be given effect. See, 5 Corbin on Contracts, p. 385, § 1068; id. Vol. 6A, p. 591, § 1472.

Examination of the facts here shows that plaintiff's tort suit must fail because he has no cause of action against Orkin in tort. The only duty Orkin is claimed to have failed to perform was its contract duty to treat the premises in such a way as to control renewed termite infestation. It performed "treatments," but it did not accomplish the required "control." Therefore, this may be regarded as a case of nonperformance of a contract obligation, and as such falls within the ambit of the above stated rule that mere failure to perform a contract obligation — or nonaction — gives rise to no claim in tort. This distinction was articulated by this court in *E. & M. Construction Co. v. Bob,* supra, where, holding that a claim in tort had been stated for defendant's negligence in so conducting the re-siding of plaintiff's house as to expose the unsided house for a considerable period to wet weather to its damage, we held: "This is defective performance rather than failure to perform the alleged contract." Id. at 128. The "defective performance" of the *Bob* case is misfeasance — the infliction of an independent injury over and above the mere disappointment of plaintiff's hope to receive his contracted-for benefit. On the present appeal we have failure to perform the contract obligation to control termites, and not the infliction of an independent injury constituting misfeasance. This formulation is further buttressed by Stevens' statement in his brief to this court that the damage occurred in portions of the house untreated by Orkin. This distinction between defective performance or misfeasance, and failure to perform, is fatal to plaintiff's cause of action in tort. The only detriment suffered by Stevens was termite damage caused by Orkin's failure to eradicate termites in all portions of the house; and thus he suffered only the loss of the hoped-for value of his bargain, and not an independent injury caused by misfeasance of Orkin. Therefore, this is not the type of nonfeasance which causes such an unreasonable risk of harm to others as to call for the application of tort liability.

This must be termed nonfeasance for yet another reason as well. As will be discussed below in relation to proof of negligence, the record is devoid of evidence of wrongdoing by Orkin in the sense that Orkin is shown to have done something the reasonable pest control operator would not have done, or to have failed to do that which the reasonable pest control operator would have done. 57 AmJur2d 419, Negligence, § 68. Nothing is shown but the ultimate nonsuccess of the termite treatments, and no theory

whatever is offered by plaintiff for this nonsuccess. Therefore, on this showing the most that can be said is that nonperformance of the contract obligation is all that appears, and this is nonfeasance.

Another independently adequate reason for which plaintiff cannot succeed in his claim here is that he has brought a negligence suit and has completely failed to prove negligence. Orkin put on no evidence at trial, and plaintiff, who had the burden, introduced absolutely no evidence of the kind of treatment afforded or not afforded, the chemicals used or not used, the style of application, Orkin's proper standard of care, and its failure to meet that standard in any particular. The only evidence was that on the first visit to the house Orkin dug a trench or holes around the house and on subsequent visits the treatment was performed indoors. From a proof-of-negligence standpoint this showing is meaningless. Therefore, this record poses a completely un-answered mystery as to why the treatments failed. Nobody knows or guesses, on the record. No viable inference is raised that the treatments failed because of Orkin's negligence, and, because res ipsa loquitur is not applicable to this action,[1] plaintiff has failed to carry his burden of proving negligence in a tort suit.

---

[1]Before the doctrine of res ipsa loquitur is applicable, it must be shown that the accident was of a kind not ordinarily occurring in the absence of someone's negligence; that it was caused by an instrumentality within the control of Orkin; and that plaintiff did no act contributing to the damage. The doctrine is not applicable where there is an intermediary cause which could produce the injury. Code § 38-123; *Hospital Authority of City of St. Mary's v. Eason,* 222 Ga. 536 (150 SE2d 812); *Rupek v. Pig'n Whistle, Inc.,* 94 Ga. App. 404 (94 SE2d 747); *Floyd v. Swift & Co.,* 59 Ga. App. 154 (200 SE 531). Moreover, the doctrine should be applied with extreme caution. *Young Men's Christian Assn. v. Bailey,* 112 Ga. App. 684 (146 SE2d 324).

Not only did Orkin not have exclusive control of the damaging instrumentality (the termites) or of the premises where the damage occurred (plaintiff's home), but more basically this court cannot say on the basis either of the record or the general knowledge of reasonable men that the occurrence or recurrence of subterranean termites is something which in the ordinary course of events would not have occurred if Orkin had used due care. See

These facts, we believe, fully distinguish *Orkin Exterminating Co. v. Callaway,* 126 Ga. App. 431 (190 SE2d 827), in which this court upheld a jury verdict for negligence, because in that case the evidence showed that Orkin failed to perform certain routine procedures because of limited crawl space beneath plaintiff's house, and plaintiff was not told that she was not receiving the complete treatment for which she had paid. No evidence of a negligent omission appears from the record before us.

Negligence is not to be presumed, but is a matter for affirmative proof. *Glynn Plymouth, Inc. v. Davis,* 120 Ga. App. 475, 487 (170 SE2d 848), aff'd. 226 Ga. 221 (173 SE2d 691), op. supp. 121 Ga. App. 717 (175 SE2d 410). In the absence of affirmative proof of negligence, we must presume performance of duty and freedom from negligence. 65A CJS 444, Negligence, § 204. Plaintiff has not overcome this presumption. The trial court erred in sending the question of negligence to the jury in the absence of evidence of Orkin's negligence. See, *Metzel v. Canada Dry Corp.,* 125 Ga. App. 460 (188 SE2d 175).

Though Stevens urges that this is strictly a tort suit, and we treat it as such, his brief on appeal taken as a whole is open to another implied construction, and therefore we additionally consider whether he has proved a case for damages for negligent breach of contract. On this analysis he fares no better, however, for the reason that the same contract which raises Orkin's duty to him limits that duty to retreatment, and Stevens has not contended that Orkin failed to retreat the premises when requested. The description on the original contract of the type guaranty to be issued, and the guaranty itself, make clear that Orkin in no way assumed responsibility under that type guaranty as opposed to other Orkin guaranties for any structural damage caused by termites if its treatments should be unsuccessful. Because Orkin as a private citizen owed plaintiff no duty except that assumed by the contract, there is no impediment to its limiting its contract liability by such a provision, and such limitations are usually valid. 5 Corbin 385, § 1068, supra. Absent a limiting statute or controlling public policy, parties may contract with one another on whatever terms they wish (*Anken Const. Co. v. Artistic Ornamental Iron Co.,* 129 Ga. App. 32 (198 SE2d 389); *Brown v. Five Points Parking Center,* 121 Ga. App. 819 (175 SE2d 901)), and the written contract defines the full extent of their rights and

*McCann v. Lindsey,* 109 Ga. App. 104 (135 SE2d 519); *Quick Shops, Inc. v. Oldham,* 100 Ga. App. 551, 556 (111 SE2d 920).

duties. *West View Corp. v. Alston,* 208 Ga. 122 (65 SE2d 406).

Stevens argues that the limitation on liability is void under the reasoning of *Screven Oil Co. v. Jarrell,* 171 Ga. 837 (157 SE 96) and under the 1970 amendment to Code § 20-504. We cannot agree. In *Screven Oil,* the Georgia Supreme Court held invalid as a violation of public policy and of statute, a provision of a contract under which plaintiff agreed to waive all statutory penalties imposed by a specific state law aimed at regulation of the manufacture of fertilizer. Here, Stevens cites no statute regulating the pest control business claimed to be violated by the instant contract provision, and *Screven Oil* is inapplicable.

To Stevens' insistence that he should not have been allowed to contract away some of his remedies, we must answer that in Georgia there is no generally applicable rule of law forbidding one contracting party from waiving all recourse in the event of breach by the other. See, *Monroe v. Martin,* 137 Ga. 262 (73 SE 341). In the absence of a public policy question, parties may contract to waive numerous and substantial rights. See 17 AmJur2d 556, Contracts, § 188 et seq.

It is unnecessary to discuss the 1970 amendment to Code § 20-504 otherwise than to note that it is entirely inapplicable to this contract which was executed April 3, 1969. There is no legislative intent apparent in the statute that it be applied retroactively, and therefore we will not so apply it (see *Robert & Co. Assoc. v. Pinkerton & Laws Co.,* 124 Ga. App. 309 (183 SE2d 628)), even assuming, without in any way deciding, that the amendment might otherwise be relevant to the subject matter of this dispute.

An additional bar to Stevens' right to prevail under the contract is his admitted failure to comply with the notice provisions of paragraphs 5 and 6. Such provisions are entirely valid, Code § 3-106, and Stevens does not even contend that Orkin waived its right to notice, or that his telephoned communications to the Orkin office in Athens satisfied the requirement of a written notice to the office in Atlanta. The failure to give notice as required or to show waiver by Orkin is an independent bar to the maintenance of a successful cause of action on the contract. Cf. *Porter-Lite Corp. v. Warren Scott Contracting Co.,* 126 Ga. App. 436 (191 SE2d 95); *Buffalo Ins. Co. v. Star Photo Finishing Co.,* 120 Ga. App. 697 (172 SE2d 159); *Myers v. Phillip Carey Co.,* 17 Ga. App. 535 (87 SE 825).

Stevens, in making this contract bargain, was under no disability, and the record contains nothing tending to show that this was a contract of adhesion. If a private party such as Orkin

undertakes to attempt to provide a pest control service only under terms limiting its liability for the mere ineffectiveness of that attempt such party violates no public policy and is entitled to have his rights protected and his duties enforced only under the terms of the contract to which he has assented. A result contrary to that achieved here cannot be squared with our most deeply rooted contract principles. A contrary decision — that is, one finding misfeasance, negligence and a valid tort action — would lead to this mischievous result: Where Orkin has undertaken a contract for termite "control" the unexplained failure of its treatments to eradicate termites constitutes *misfeasance* of a kind which will support a tort action for negligence even though res ipsa loquitur is not applicable and even in the absence from the record of any evidence whatsoever of any specific action or nonaction on the part of Orkin which is claimed to have been negligent in giving the treatments. Such a holding would deem mere nonsuccess the equivalent of negligence; it would make Orkin an insurer of its success despite the obvious contractual limitation on the risk it agreed to undertake. It would have the ultimate pernicious effect of unsettling almost all extant contractual relations and damping future willingness to contract in general, by decreeing that there shall be strict tort liability for a mere failure to perform one's contract duty, even where such failure to perform is not shown to have been negligent. Such a completely irrational approach cannot recommend itself to any thoughtful analysis.

Orkin was entitled to judgment as a matter of law, and the trial court erred in denying its motion for directed verdict and sending the case to the jury. As we are reversing the trial court, we also deny Stevens' motion filed in this court for the award of damages against Orkin for taking a frivolous appeal.

*Judgment reversed. Bell, C. J., Eberhardt, P. J., Deen, Quillian, Clark and Stolz, JJ., concur. Pannell, J., concurs in the judgment. Evans, J., dissents.*

ARGUED JULY 9, 1973—DECIDED NOVEMBER 7, 1973—REHEARING DENIED DECEMBER 4, 1973—

*Lawson E. Thompson,* for appellant.
*Walton Hardin,* for appellee.

EVANS, Judge, dissenting. Plaintiff's complaint and evidence in this case show that on April 3, 1969, plaintiff Stevens entered into

contract with defendant, Orkin Exterminating Company, Inc., for the treatment and protection of his residence against termites. He paid $259 initially and contracted to pay $25 per year thereafter for annual inspection and retreatment if necessary. Plaintiff alleged and proved that Orkin failed to properly treat his house, and that as a result of carelessness and negligence of Orkin the house was damaged to the extent of $600. Specifically, while Orkin did treat the house, it did so negligently and carelessly, and failed to treat certain strategic portions of the building. As a result of such carelessness and negligence subterranean termites originated in the untreated portions of the house and severely infested same; from 1969 through 1972 termites swarmed in the premises at various times, and during all of which time Orkin's contract to protect the house from termites was in effect.

Stevens brought an action in Superior Court of Wilkes County against Orkin, and upon the trial of the case, a jury rendered a verdict for plaintiff, upon which judgment was regularly entered. During the course of the trial, defendant moved for directed verdict, and afterwards filed a motion for judgment n.o.v.

The majority opinion holds that Orkin's motions for directed verdict and for judgment n.o.v. should have been granted and that Stevens should not have been allowed a recovery.

I disagree, and respectfully dissent for the reasons hereafter set forth.

The majority opinion, at page 365, seemingly recognizes the following correct legal principles, to wit:

1.  One of two contracting parties may sue the other *in tort* because of the violation of a duty owed, *because of the contract, as a matter of law,* though not necessarily a duty arising *under the contract.*

2.  One of two contracting parties may sue the other *in tort* for misfeasance (negligently, or failing to properly perform an obligation arising under the law, because of the contract) but may not sue for *nonfeasance* (mere failure to perform the contract, or to do that which he ought to have done).

These are correct legal principles, and I repeat, the majority seems to have recognized them as such at page 365 of the majority opinion.

But then, at page 366, the majority opinion falls into its first serious error, wherein it asserts that plaintiff, Stevens', contentions: ". . . may be regarded as a case of *nonperformance* of a contract obligation, as such falls within the ambit of the above stated rule

that *mere failure to perform* a contract obligation — or nonaction — gives rise to no claim in tort." (Emphasis supplied.) This error pervades all of the remainder of the majority opinion, and having made this first erroneous finding, the majority proceeds to erroneously hold: 1. This action is not brought in tort but is brought in contract. 2. The statement in the contract that notice in writing to Orkin be given and Stevens' failure to give such written notice bars a recovery. 3. Even if Stevens could recover, his only measure of damages must be that provided for in the contract, to wit, a further application of treatment to control termites (which, according to Stevens, if applied as the other was applied, would have been of no value whatever and would not have deterred one single termite from its destructive work). I repeat that these holdings were each and all erroneous.

Plaintiff did not contend or rely upon *nonfeasance;* to the contrary he alleged, relied upon, and proved *misfeasance.*

Black's Law Dictionary defines *misfeasance* as "not doing a lawful act in a proper manner; *omitting to do it as it should be done,"* while *nonfeasance* is "neglect or failure of a person to do some act which he ought to do."

If plaintiff had alleged and proved that Orkin took his money and then *failed to treat his house against termites,* that would have been *nonfeasance.* But, to the contrary, he alleged that Orkin did treat his house against termites, *but failed to do it as it should have been done, that is, did it improperly, negligently and carelessly.*

Let us examine paragraph 3 of plaintiff's complaint, which is as follows: "3. That the agents, servants and employees of defendant *failed to properly treat* plaintiff's house, and *as a result of the carelessness and negligence* of said agents, servants and employees of defendant, plaintiff's house was damaged by termites." (Emphasis supplied.) This leaves it beyond peradventure that plaintiff contended there had been *misfeasance, (not nonfeasance)* and the majority simply erred in construing his action as one brought for *nonfeasance.*

While perhaps unnecessary to this discussion, the cases of *Harper v. DeFrietas,* 117 Ga. App. 236 (1) (160 SE2d 260); and *Hunter v. A-1 Bonding Service,* 118 Ga. App. 498 (2) (164 SE2d 246) and multiple cases following these, make it very clear that since the advent of the Civil Practice Act, contrary to the law as it stood prior to that time, pleadings are now construed most favorably toward the pleader, and in this case if there is any ambiguity (we say there is none whatever) the complaint would be construed so as to uphold

the cause of action, not so as to defeat it. Code Ann. § 81A-108 (f) (§ 8 CPA; Ga. L. 1966, pp. 609, 619; 1967, pp. 226, 230).

A case that is directly in point, and singularly enough, is against the same defendant, Orkin, is that of *Orkin Termite Co. v. Duffell,* 97 Ga. App. 215, 216 (102 SE2d 629), wherein the plaintiff alleged that defendant *failed* to reinspect, instead of alleging that defendant *negligently reinspected,* and it was held that because of this difference, the petition did not set forth a good cause of action. At page 216 the holding clearly shows what must be alleged in order to set forth a good cause of action, in the following language: "The plaintiff's petition is based on the alleged *nonfeasance* of defendant and not on the *malfeasance* of such defendant, to wit: *Failure* to reinspect, *failure* to retreat; *failure* to discover, and to prevent termite damage. *There is no allegation that an inspection was negligently made, or that any retreatment was negligently given the premises, or that because of such negligent inspection the termites were not discovered, or that because of such negligent treatment the termites caused the alleged damages to the premises.* The whole case is predicated on the alleged negligence in *failing to perform* the duties which arose out of the contract, and *not on the negligent performance of such duties."* (Emphasis supplied.)

The above case is as explicit as can be. Every detail that was *absent* in that case was present in the Stevens case. Stevens did not contend that there was a failure to apply and inspect, etc., but contended *it was not properly done, but was done carelessly and negligently.* Judges Nichols, Felton and Quillian concurred.

Following this case, this court considered another action against Orkin in the case of *Orkin Exterminating Co. v. Callaway,* 126 Ga. App. 431 (190 SE2d 827). There suit was brought because of *negligence* of the defendant, for that, during the term of the contract, when it was supposedly "protecting" the premises from these insects, termites in fact infested the property and swarmed and damaged the supporting structures of the house. Defendant, as in the Stevens case, moved for directed verdict, which was not granted, and the jury awarded $1,500 to plaintiff for damages. The evidence showed that Orkin made two inspections and reported the house in satisfactory condition, when, in fact, there was widespread damage and clouds of swarming termites. The case turned on *Orkin's negligence,* and this court held that "negligence may be proved by circumstantial evidence where there is an inference of cause and effect relationship which preponderates toward the

theory that the damages resulted from the defendant's negligence rather than any other reasonable hypothesis, "and judgment for plaintiff was affirmed. Judges Deen, Eberhardt and Clark concurred. This case is on all-fours with the Stevens case.

The following authorities should help to clarify any problems of law arising in this case and clearly support Stevens' position, to wit: In *A. A. A. Parking, Inc. v. Bigger,* 113 Ga. App. 578, and at 581 (149 SE2d 255), it is held: "Where the plaintiff's petition is based on the defendant's alleged *nonfeasance* of duty provided by contract, *and not on the defendant's misfeasance,* it does not set forth a cause of action ex delicto." (Emphasis supplied.)

In *E. & M. Construction Co. v. Bob,* 115 Ga. App. 127 at 128 (153 SE2d 641), this court, speaking through Judge Hall, as to the failure of a contractor to *properly repair* a house under a contract, held that: ". . . This is *defective performance rather than failure to perform* . . . 'One who undertakes by virtue of a contract to repair a chattel for another owes to such other the duty to use ordinary care in making such repairs so as not to endanger the lives and limbs of others by a negligent performance, the consequences of which may be foreseen by him' . . ." (emphasis supplied) and held that a good cause of action was set forth.

In *Rawls Brothers Co. v. Paul,* 115 Ga. App. 731, 734 (155 SE2d 819), this court held: "The alleged acts of negligence here do not relate to the failure to perform a duty required by the contract . . .but relate solely to breaches of duty arising from the relation of the parties and the duties arising therefrom. The petition set forth a cause of action in tort."

A pertinent authority on the *duties that arise by law* (and not merely by contract) is *Frank Graham Co. v. Graham,* 90 Ga. App. 840 (2) (84 SE2d 579), where it is held: "One who undertakes by virtue of a contract to repair a chattel for another owes to such other the duty to use ordinary care in making such repairs . . ." Another such case is *Townsend &c. Enterprises v. W. R. Bean & Son,* 117 Ga. App. 109 (159 SE2d 776), in which case a contract for repairs was made, and the workman cut a hole in the roof as required by the contract, and did not cover the hole in time to prevent injury to the tenant. Defendant sought to defend on the ground that he only did what was required by the contract, to wit: cut a hole in the roof, and that he could not be held liable for performing his contract. The court, at page 117, says: "We do not think that Law (the workman) should hide under the cloak of the contract with the landlord, and avoid liability on demurrer merely

because the act of cutting a hole in the roof was authorized without any contractual obligation to cover the roof, i. e., as stated by counsel, 'Law performed the job it was employed to do.' Instead, we think Law had an obligation to provide immediate safeguards for the protection of the tenant's property." Of course, Law's duty to cover the hole he had cut in the roof *did arise because of the contract,* as he would not have cut the hole in the roof except for the contract. But the duty to cover the hole did not arise *under the contract,* as no mention of covering the hole was made therein. As was stated in several of the cited authorities, including *Graham,* supra, and *E & M Construction Co.,* supra, when two parties contract, by the terms of which one is to repair property of the other, regardless of the terms of the contract, the law steps in and imposes a duty on the workman to use ordinary care in making such repairs. That is what is meant by "a duty arising under the law," not necessarily under the contract, although the duty would not have arisen had there been no contract.

The following statutes are helpful on this question. Code § 105-103: "When the law requires one to do an act for the benefit of another, or to forbear the doing of that which may injure another, though no action be given in express terms, upon the accrual of damage the injured party may recover." Code § 105-104: "Private duties may arise from statute or flow from relations created by contract, express or implied. The violation of any such specific duty, accompanied with damage, shall give a right of action." Code Ann. § 105-106: "No privity is necessary to support an action for a tort; but if the tort results from the violation of a duty, itself the consequence of a contract, the right of action is confined to the parties and privies to that contract, except in cases where the party would have had a right of action for the injury done, independently of the contract, and except as provided in Code section 109A-2—318."

The present case against Orkin was brought by Stevens because of Orkin's *misfeasance,* and his recovery and the judgment of the lower court should be upheld. I therefore respectfully dissent from the majority opinion.