Sidney H. SMITH, Plaintiff,

v.

ORKIN EXTERMINATING COMPANY, INC., Defendant.

Civ. A. No. S89–0525(G).

United States District Court, S.D. Mississippi, S.D.

Oct. 23, 1990.

Joe Sam Owen, Gulfport, Miss., for plaintiff.

Joshua J. Wiener, Jackson, Miss., for defendant.

## MEMORANDUM OPINION

GEX, District Judge.

The plaintiff, Sidney H. Smith, brings this action against defendant Orkin Exterminating Company, Inc. [Orkin] for damages sustained as a result of Orkin's allegedly negligent fumigation of Smith's home. In addition, the plaintiff contends that Orkin breached its express warranty. Orkin now moves for summary judgment.

### Statement of Facts

As is the course for most summary judgment situations, the facts in the instant litigation are largely undisputed. Smith completed construction of a log home in Kiln, Mississippi in August 1983. In 1985, Smith began to notice evidence of insect infestation in the logs of his home. Particularly, the insects were determined to be wood borers.[1] At that time, Smith was receiving monthly pest control service from Orkin for roaches and other household pests. Smith disclosed the wood borer exit holes to an Orkin pest control technician who allegedly misdiagnosed the problem as carpenter bees.

In mid–1986 the infestation manifested itself clearly. Hundreds, even thousands, of exit holes began appearing in the logs. The exit holes affected the entire exterior of the house and were also materializing on the inside of the structure. Smith notified Orkin once again. Joe Jackson, an Orkin representative, and Hayes Pellegrin, the Orkin manager, responded with a visit to the premises. At this point, Orkin's personnel correctly concluded that the house was infested with wood borers.[2]

---

1. Wood borers tunnel into the trees that make up the logs. In other words, they are living in the logs before the logs are brought to the construction site. Eventually, the insects emerge from the logs, occasionally as long as seven years after construction. The insects themselves are rarely seen, but they leave an "exit hole" and fresh sawdust as evidence of their emergence.

2. Smith immediately turned his attention toward Hood Construction Company [Hood] which sold him the logs. He filed suit against Hood very soon after the discovery of the wood borers. In the course of discovery Smith learned that Hood had failed to perform three basic functions which log companies should do to eliminate potential wood borer infestations. Hood allegedly failed to: (1) properly kiln dry the logs; (2) treat the logs with insecticide; and

After being informed that he should fumigate his house, Smith obtained clearance from the Mississippi State Department of Agriculture, Division of Plant and Pest Control, as required by state law. Smith called on State Inspector Maurice Duffel to inspect the house. Duffle was accompanied by Lonnie Williams with the nearby United States Forestry Experiment Station. Smith informed Duffle and Williams that for personal reasons he needed to sell his house. However, they advised him that he would not be able to obtain a clean wood infesting insect certificate unless the fumigation was performed.

Smith decided to proceed with the fumigation and hired Orkin to perform the work after he had compared costs between Orkin and Redd Pest Control. On November 15, 1986, Smith signed Orkin's form "Fumigation Agreement." The contract is a consumer contract subject to cancellation within three days after execution. It has a "base price" of $5,720 and was payable with interest in 12 monthly installments. The contract provides on the first pages that "I will receive my guarantee after completion of Orkin's initial treatment. My guarantee will cover my building described in the attached graph and specifications and will be subject to and governed by the general terms and conditions appearing on the back of this contract." The back page of the contract states a "Limited Dry Wood Termite, Power Post Beetle, or Old House Borer control Guarantee" which provides as follows:

Subject to the general terms and conditions, Orkin will fumigate my structure for the control of dry wood termites, powder post beetles, or wood borers, as indicated, and will issue me a limited control guarantee which will provide for retreatment at no extra cost to me should a reinfestation be discovered during the period my limited guarantee is in force. I understand that my limited guarantee is for a maximum period of five years from date of issue. I understand that Orkin's liability under this agreement is limited to retreatment only,

and is not responsible in any way for damages or repairs to my structure or contents.

Orkin performed a fumigation of the plaintiff's log home in late November, 1986. At that time, Orkin enveloped Smith's home with a visqueen tent and injected gas into the premises. Of course, this procedure required Smith's evacuation from the premises, and he was not present when the fumigation occurred. According to Smith's deposition, he was told that during the fumigation the visqueen tent blew off, and he insisted that Orkin perform the fumigation a second time. This they did on January 8, 1987, and Orkin issued its "Retreatment Guarantee" which provides as follows:

Orkin guarantees that it will, at no extra cost, apply any necessary additional treatment to the premises if an infestation of the aforesaid wood infesting organism is found in the treated premises during the period this guarantee is in force. Orkin's liability under this guarantee is limited to retreatment only. In your contract you expressly waived and released Orkin from liability for, any claims for damages to the structure or its contents occasioned by an infestation of the aforesaid wood infesting organism.

In mid to late 1987, the plaintiff began to suspect that Orkin's fumigations had not completely eradicated the wood borers since he saw what he believed to be new exit holes. Smith stopped paying the installments on the contract sometime in mid–1987 and reported his problems to Orkin. He then hired an attorney to make contact with Orkin, and the attorney wrote a letter to Orkin's district manager in which Smith made several demands for compensation. The letter also states that Smith was not interested in a refumigation. Orkin's district manager, Arvil Aldridge, responded to Smith's attorney by letter dated January 25, 1988. Aldridge referred to his own recent inspections during which no

(3) treat the logs with a water repelling preservative. As of the date the instant motion was

filed, Smith's case against Hood was still pending in Louisiana.

evidence of active wood borers was found. The letter notes that Orkin had previously agreed that Smith need not make further payments until March 1988, and that Orkin would make another inspection of the home. Aldridge rejected the various demands made by Smith's attorney, stating, "Our contractual agreement would be to refumigate the property, if an inspection should deem this necessary."

Orkin's personnel reinspected the house at various times in 1988 and did not find evidence of an active infestation justifying a refumigation. Indeed, Orkin provided Smith and his realtors with clean wood infesting insect certificates in connection with his efforts to market the log home. In April 1989, Smith again noted what he believed were new holes. He called the Mississippi State Department of Agriculture to send an inspector. Raymond Lee of that office visited Smith's home. Lonnie Williams with the U.S. Forestry Experiment Station was again in attendance. Lee and Williams concluded on this inspection that there remained an active infestation, although it is unclear from their report how extensive it was. Lee's supervisor, Jim Haskins, wrote to Orkin advising Orkin that an active infestation had been found and requested Orkin to settle the matter directly with Smith.

The parties then engaged in various discussions concerning the settlement of the matter. Along the way, Orkin tendered its check refunding all amounts paid by Smith under the Fumigation Contract and canceled any further obligations thereunder. Smith negotiated Orkin's check. Thereafter, there were no more successful settlement negotiations. Orkin felt as if it had extinguished its responsibilities, and Smith filed suit. The complaint seeks compensation for the following items of damage: (1) reduction in the fair market value of the log home; (2) permanent structural damage; and (3) emotional and financial anguish.

The defendant now moves for summary judgment based upon the terms of the installment contract and the fumigation guarantee. That is, the defendant argues that it limited its liability for breach of express warranty, that it lived up to the terms of that agreement, and that the plaintiff is not entitled to any further recovery.

### Conclusions of Law

 A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party "... the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c). The moving party initially carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Materiality connotes disputes over facts which might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, "... summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

 Once the burden of the moving party is discharged, the burden shifts to the nonmoving party to go beyond the pleadings and by his own affidavits, or by the "depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Thomas v. Harris County*, 784 F.2d 648 (5th Cir. 1986). If the opponent fails in his duty, summary judgment is implicated. The Supreme Court has also stated that summary judgment is mandated where sufficient time for discovery has elapsed and a party has failed to establish an essential element of his case upon which he would have born the burden of proof at trial. *Celotex Corp., supra; Washington v. Armstrong World Industries*, 839 F.2d 1121, 1122 (5th Cir.1988).

## I. *Underlying Liability*

■ In the instant case, the relevant facts are undisputed. The question turns upon the legal redress to which the plaintiff is entitled. The defendant relies upon its limitation of liability clauses in the contract and guarantee, and it argues that Mississippi law allows such limitation of remedies. In support thereof, the defendant cites to *Stribling Brothers Machinery Co. v. Girod Co.*, 239 Miss. 488, 124 So.2d 289 (1960) [*Stribling Brothers*]. That case involved a claim that an engine sold by Stribling to Girod was defective, allegedly resulting in large expense repairs and Girod's lost profits. *Stribling Brothers*, 124 So.2d at 291. However, the purchase order by which the equipment was sold contained an express warranty that Stribling would replace, without cost to Girod, any parts which were defective in material or workmanship. *Id.*, 124 So.2d at 292. The purchase order expressly provided that "no warranty of any machinery is made or authorized to be made by the seller other than the above specified." *Id.*

The Mississippi Supreme Court held that it was error to submit to the jury any issues stemming from Girod's claim. *Id.* at 291–292. "Seller's liability was limited to the specified warranty ... The seller's liability was expressly limited to the stated warranty, negativing any other. It is well established that an express warranty of this type excludes the idea of an implied warranty." *Id.* The court summarized its holding as follows: "The express warranty and disclaimer of any other warranties, as set forth in the customer's order, limited the liability of Stribling Machinery to the duties stated in the warranty of the electric set." *Id.* at 293.

The holding in *Stribling Brothers* has been limited by the adoption of Miss.Code Ann. § 11–7–18 [3] and the Uniform Commercial Code [UCC], Miss.Code Ann. §§ 75–1–101, *et seq.*, which forbids the limitations of implied warranties and limitations of the remedies for the breach of the implied warranties by the seller of goods or services.[4] As a matter of fact, the UCC also prohibits the limitation or modification of consumers' remedies for the breach of the express warranties made by the manufacturer of consumer goods. Miss.Code Ann. § 75–2–315.1(2).[5]

However, the instant case does not fall within the protections afforded by either Miss.Code Ann. § 11–7–18 or Miss.Code Ann. § 75–2–315.1. First, the instant litigation does not involve a claim for breach of implied warranties. The complaint reads:

> Plaintiff would show that the Defendant expressly warranted that the fumigation treatment would free his home of live infestation and would prevent reinfestation and permanent damage to the structure. However, Plaintiff alleges that the Defendant breached its express warranty because of the failure of the fumigation process to remove the live infestation and prevent reinfestation. As a result of the breach of warranty, the Plaintiff has sustained damages.

(Plaintiff's Complaint, Count Two, Para. I). Even had the defendant attempted to limit the implied warranties, the plaintiff does not seek remedies based thereon. Further, the contract at issue in the case *sub judice* is one primarily for services. Clearly, the prohibition on the limitation of express warranties only applies to the manufacturer of consumer goods. Therefore, there is nothing in the Mississippi statutes that

---

**3.** Miss.Code Ann. § 11–7–18 provides:

There shall be no limitation of remedies or disclaimer of liability as to any implied warranty of merchantability or fitness for a particular purpose.

**4.** The UCC provides at Miss.Code Ann. § 75–2–315.1(1):

Any oral or written language used by a seller of consumer goods and services, which attempts to exclude or modify any implied war-

ranties of merchantability and fitness for a particular purpose or to exclude or modify the consumer's remedies for breach of those warranties, is unenforceable.

**5.** Miss.Code Ann. § 75–2–315.1(2) provides:

Any oral or written language used by a manufacturer of consumer goods, which attempts to limit or modify a consumer's remedies for breach of the manufacturer's express warranties, is unenforceable.

would forbid the limitation of the remedies for the breach of an express warranty provided in a service contract. Nor has the plaintiff here cited any authority in Mississippi common law which would support the proposition. Rather, the plaintiff's contentions are based upon implied warranties and UCC provisions wholly inapplicable to the instant case.[6]

What is left here is an action on a contract which limited the remedy for the breach of the express warranty stated therein. Clearly, the service contract confines the recovery to reinspection and refumigation in the event of a reinfestation. This the defendant offered to do, and this is all the defendant is legally required to do. There is nothing to indicate that the instrument was not freely entered into, and there is no evidence that the plaintiff was unaware of its terms. Orkin is not responsible for creating the infestation in plaintiff's log home. Rather, it contracted to eradicate the insects. Orkin undertook that obligation only with a clear understanding of what it would be required to do if it failed with its first fumigation, and the plaintiff paid installments pursuant to the agreement.

■ The plaintiff additionally insists that the limitation of remedies clause is unenforceable because it violates Miss.Code Ann. § 15–1–5 which states:

the limitations prescribed in this chapter shall not be changed in any way whatsoever by contract between parties, and any change in such limitations made by any contract's stipulations whatsoever shall be absolutely null and void, the object of this section being to make the period of limitations for the various causes of action the same for all litigants.

The plaintiff's argument is based upon the prefacing clause of the limitation of liability clause which reads, "Subject to the general terms and conditions." Under the general terms and conditions provisions, Orkin includes a paragraph numbered "6" which establishes a one-year limitations period for instigating suit. Therefore, the plaintiff argues that since paragraph 6 is invalid and since the limitations of liability clause is subject to its provisions, then the limitations of liability clause must also be invalid. However, there is no indication that the clauses are mutually dependent, and this Court can easily sever the allegedly unenforceable clause from the remainder of the contract without reforming the substance of the contract. *Accord Lawler v. Government Employees Insurance, et al.,* 569 So.2d 1151 (Miss.1990) (notice provision of insurance policy void as contractual limitation period, but remainder of contract enforceable); *Richards v. Allstate Insurance Co.,* 693 F.2d 502 (5th Cir.1983) (coverage limitation clause in policy unenforceable under Mississippi law, but policy as whole enforceable).

The plaintiff then makes the argument that the contract for fumigation and the limitation of liability only applied to old house borers which was not the problem in Smith's house. The plaintiff then states that the retail installment contract was silent as to the flat head wood borer because Mississippi regulation does not authorize such. However, these arguments fail in light of the clear contract language. The limitation of liability clause begins, "Subject To The General Terms And Conditions, ORKIN Will Fumigate My Structure For The Control of Drywood Termites, Powder Post Beetles Or *Wood Borers* . . . ."

■ The plaintiff here also makes a claim against Orkin for negligence. In order to maintain his action for negligence under Mississippi law, the plaintiff has the burden of proving that (1) the defendant owed him a duty; (2) the defendant breached that duty; (3) damages occurred be-

---

6. The plaintiff relies upon several provisions of Article Two of the UCC. However, by its own terms *Article Two only applies to the sale of goods.* Miss.Code Ann. § 75–2–102 reads:

Unless the context otherwise requires, this chapter applies to transactions in goods; it does not apply to any transaction which al-

though in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction nor does this chapter impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers.

cause of the breach; and (4) the breach was the proximate cause of the damages. *Grisham v. John Q. Long V.F.W. Post,* 519 So.2d 413 (Miss.1988) (quoting *Burnham v. Tabb,* 508 So.2d 1072 (Miss.1987)). The only duty that the plaintiff has shown here is the duty Orkin owed him as a direct result of the contract. In *Orkin Exterminating Co. v. Stevens,* 130 Ga.App. 363, 203 S.E.2d 587 (1973) the court upheld Orkin's limited retreatment guarantee on these same grounds. Stevens brought an action against Orkin to recover for structural damage caused by termites in portions of his house not involved in the initial termite infestation. However, he had entered a contract which stated that the guaranty was limited to the application at no cost of additional treatments if reinfestation occurred. *Orkin,* 203 S.E.2d at 589. The appellate court reasoned:

> It is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of contract to avoid harming him. *See, e.g., E. & M. Construction Co. v. Bob,* 115 Ga.App. 127, 153 S.E.2d 641 [(1967)]; *Rawls Bros. Co. v. Paul,* 115 Ga.App. 731, 155 S.E.2d 819 [(1967)]. Such an independent harm may be found because of the relationship between the parties, or because of defendant's calling or because of the nature of the harm.
>
> \* \* \* \* \* \*
>
> However, not all breaches of contract are also independent torts: "... where defendant's negligence ends merely in nonperformance of the contract and where defendant is not under any recognized duty to act apart from contract, the courts generally still see no duty to act affirmatively except the duty based on—and limited by—defendant's consent." 2 *Harper and James, Torts,* p. 1050, § 18.6. In those circumstances, an action in tort may not be maintained for what is merely breach through non-action or through ineffective performance (which is the same thing) of a contract duty—the duty must arise independent

of contract to constitute a tort, e.g., *Louisville & Nashville R. Co. v. Spinks,* 104 Ga. 692, 30 S.E. 968 [(1898)]. Even this formulation, however, is limited by the rule that where nonperformance or inaction is of such a type as to create an unreasonable risk of harm to others, even nonperformance of a contract duty—nonfeasance—may give rise to a tort action. *See, Moody v. Martin Motor Co., supra* [76 Ga.App. 456, 46 S.E.2d 197 (1948)], *accord,* 2 *Harper and James, Torts,* pp. 1015–1027, §§ 18.1 and 18.2. Finally, where the breach of contract is not also a tort, limitations of liability for breach will usually be given effect. *See, Corbin on Contracts,* p. 385, § 1068; *id.* Vol. 6A, p. 591, § 1472.

Examination of the facts here shows that plaintiff's tort suit must fail because he has no cause of action against Orkin in tort. The only duty Orkin is claimed to have failed to perform was its contract duty to treat the premises in such a way as to control renewed termite infestation. It performed "treatments," but it did not accomplish the required "control." Therefore, this may be regarded as a case of nonperformance of a contract obligation, and as such falls within the ambit of the above stated rule that mere failure to perform a contract obligation—or nonaction—gives rise to no claim in tort. This distinction was articulated by this court in *E. & M. Construction Co. v. Bob, supra,* where, holding that a claim in tort had been stated for defendant's negligence in so conducting the re-siding of plaintiff's house as to expose the unsided house for a considerable period to wet weather to its damage, we held, "This is defective performance rather than failure to perform the alleged contract." *Id.* [115 Ga.App.] at 128, 153 S.E.2d at 642. The "defective performance" of the *Bob* case is misfeasance—the infliction of an independent injury over and above the mere disappointment of plaintiff's hope to receive his contracted-for benefit. On the present appeal we have failure to perform the contract obligation to control termites, and not the

infliction of an independent injury constituting misfeasance. This formulation is further buttressed by Stevens' statement in his brief to his court that the damage occurred in portions of the house untreated by Orkin. This distinction between defective performance or misfeasance, and failure to perform, is fatal to plaintiff's cause of action in tort. The only detriment suffered by Stevens was termite damage caused by Orkin's failure to eradicate termites in all portions of the house, and thus he suffered only the loss of the hoped-for value of his bargain, and not an independent injury caused by misfeasance of Orkin. Therefore, this is not the type of nonfeasance which causes such an unreasonable risk of harm to others as to call for the application of tort liability.

*Orkin,* 203 S.E.2d at 590-91.

The reasoning of *Orkin* is particularly applicable in the instant case.[7] The complaint avers that the defendant negligently failed to treat and cure the infestation, and that it negligently failed to prevent reinfestation. Neither of these duties did the defendant owe to the plaintiff outside the contract provisions. In other words, had it not been for the contract, the defendant would have had no duty to treat the infestation at all, and, consequently, no responsibility to prevent reinfestation. In allegedly failing to perform those duties, the defendant merely breached the terms of the contract, the remedies for which are permissibly limited by the contract language itself. *See* 57A Am.Jur.2d, § 120, p. 178 (where action is brought in tort for the "negligent breach" of a contractual duty, the nature of the duty owed and the consequences of its breach must be determined by reference to the contract which created the duty.)

For these reasons, this Court finds that Orkin permissibly limited its liability for breach of it services contract to reinspection and retreatment. Therefore, the plain-

tiff's claim for damages for the reduction in the fair market value of the house, structural damage, and emotional and financial anguish are precluded as a matter of law. The defendant is then entitled to summary judgment on these issues. As a consequence, the plaintiff's claim for punitive damages is likewise precluded.

### Conclusion

For the reasons discussed above, this Court finds that the defendant's motion for summary judgment is well-taken and should be granted.

---

7. This Court is aware that jurisdiction in this case is based upon diversity, and that it is *Erie*-bound to apply the law of the forum state. *Eichenseer v. Reserve Life Ins. Co.,* 682 F.Supp. 1355, 1361 (N.D.Miss.1988). Of course, in this case that would be Mississippi law. Although the case of *Orkin Exterminating Co. v. Stevens,* 130 Ga.App. 363, 203 S.E.2d 587 (1973) relies upon Georgia law, this Court still finds it instructive on general principals of tort law.