## 71169. BROWN v. CITY OF FITZGERALD.
### (341 SE2d 476)

BEASLEY, Judge.

Brown filed a complaint against the City of Fitzgerald, alleging that he was injured when an aluminum extension pole that he was using to paint the roof of a residence came into contact with an energized electric line owned and operated by the municipal utility of the defendant. Brown contended that the proximate cause of his injuries was the negligence of the defendant in maintaining, constructing and inspecting the line. A jury trial was held and Brown appeals from the judgment based on the jury's verdict for defendant.

On the date of the accident, Brown, along with Dewey Jarchow and Loy Reed, was employed to paint the metal roof of the Fletcher residence located in the city. Three electric utility lines ran along the east side of the house; the closest line was maintained 2.2 feet from the structure.

In order to apply paint to the steep slope of the roof, Brown secured a ten-foot aluminum pole to a wooden mop handle and was "straddling the roof" at its highest peak. When Brown repositioned the extended mop handle in order to dip it into the paint container, the metal extension pole made contact with the energized electric line, injuring Brown and throwing him from the roof.

1. Appellant enumerates as error the trial court's refusal to recharge the jury with respect to specific questions arising during the course of their deliberations. The following handwritten questions were submitted to the trial judge after two hours of deliberations: "[1] If the Plaintiff did not exercise ordinary care, does it matter if the Defendant was more than fifty percent negligent? Which charge would rule? [2] Please re-tell us the ordinary care charge. [3] Can Plaintiff receive any compensation if we find in favor of the Defendant?"

Appellant requested that the court recharge the jury on comparative negligence (included in the original charge) and explain the applicability of that principle of law. Appellee responded that the trial court could completely recharge all the principles of law or, alternatively, the court could instruct the jury that they should remember the law as originally charged and apply it. Appellee urged the latter approach.

Appellant again reiterated his request to recharge on the principles of comparative negligence and the duty to exercise ordinary care, in an effort to clarify questions one and two. As to the court's inquiry about how to respond to question three, he stated, "That's easy. No."

The court then sent a written message into the jury room, instructing the jurors to discuss among themselves the charges on the law previously given to them, that they would recall what those

charges were and that they themselves must answer the questions posed.

Shortly thereafter a verdict was returned in favor of the defendant.

It is the duty of the trial judge when faced with a question from the jury to clarify any confusion as to the applicable issues of law as raised by the evidence at trial. *Matthews v. Taylor*, 155 Ga. App. 2, 4 (2) (270 SE2d 247) (1980). Here the jury was obviously confused as to the elements of comparative negligence and its applicability to the evidence. In addition, the jury did not understand the application of comparative negligence as it related to the duty to exercise ordinary care.

As a result of the jury's confusion, and the court's refusal to remove it and clarify the law by answering the questions, the jury may well have based its decision on an erroneous understanding and application of the principles of comparative negligence. When a jury is in doubt and requests further instructions on a particular question, it is the duty of the trial court to so instruct it. *Freeman v. State*, 142 Ga. App. 293, 295 (4) (235 SE2d 560) (1977).

In *Hubert v. Marietta*, 224 Ga. 706, 711 (4) (164 SE2d 832) (1968), reversible error resulted when the jury foreman requested a recharge and the judge recharged the jury on the subject substantially as it had been given initially. The foreman remained uncertain about the subject of the charge. It was held that the court's failure to provide *additional* clarifying instructions amounted to reversible error. Rereading of the original charge was insufficient if the jury remained confused.

In commenting on the need for clear and intelligible jury instructions, legal writers have observed, "In our century, we continue to assume that a jury can be adequately informed of the law's requirements by oral instructions from a judge. Obviously, the jury needs to know the points of law in order to be able to determine whether the facts justify one verdict or another . . . Uncomprehending juries may resolve conflicts in many cases on uncertain bases. It is possible that many hung juries result from a lack of comprehension more than from disagreement over any fact at issue." Strawn & Buchanan, *Jury confusion: A threat to justice*, 59 Judicature 10, pp. 478-79 (May 1976).

The questions submitted by the jury demonstrate their lack of comprehension of some of the basic principles of tort law applicable to the case they were charged with deciding. Moreover, their final query as to whether the plaintiff can be compensated if a verdict is returned in favor of the defendant indicates utter confusion with the jury instructions.

In *Parker v. State*, 169 Ga. App. 557, 558 (2) (313 SE2d 751)

(1984) we held that when a jury requests further instructions on a particular point, the court in its discretion may recharge in full or only on the point requested. Here, although a recharge was requested, *none* was given. Telling the jury to remember what the evidence was, when the jurors have a question relating to that, is one thing; telling the jury to reconstruct in their minds what the judge charged as to the legal principles to be applied to the facts as they found them from the evidence, is quite another. There are numerous reasons why evidence should not be repeated, but the necessity for the jury to clearly understand the law in order to render a lawfully arrived-at verdict mandates repetition or clarification or both, to set them on the right course in the event of question. See also *Edwards v. State*, 233 Ga. 625, 626 (2) (212 SE2d 802) (1975).

Accordingly we find that reversible error resulted when the trial court refused to re-instruct the jury after they requested further enlightenment on particular points of law. Merely sending a message to the jury to consider the instructions previously given was insufficient under the circumstances. *Freeman v. State*, supra.

2. Appellant's enumeration of error that the trial court erred in denying his request to excuse a juror for cause, is rendered moot by our ruling in Division 1.

3. Appellant contends that the trial court erred in instructing the jury as to the doctrine of assumption of the risk since the instruction was not authorized by the evidence. As the same question will no doubt reoccur upon retrial, it bears resolution.

The evidence adduced at trial demonstrated that appellant was an experienced electrician, that he was familiar with the Fletcher house having visited there since he was a child, that both assistant painters Jarchow and Reed were aware of the electric utility lines in proximity to the house, that upon notification to the city of work intended to be done in the vicinity of utility lines, the city will de-energize or sleeve the lines, and that no such request was made here.

Smith, a representative of the city, testified that he was notified of the accident and immediately went to the Fletcher house. There he spoke to Jarchow who told him that on the previous day he and Brown were working at the Fletcher residence. Brown had come so close to the utility lines that he "drew an arc." Jarchow said that he had warned Brown that he would be in trouble if he were not careful.

Brown testified at trial that he was unaware of the existence and location of the power lines. He now claims that Jarchow's statements to Smith were hearsay, although not objected to at trial.

Appellee submits that the statements should be considered as part of the evidence which would authorize a charge of assumption of the risk as the testimony falls within the *res gestae* exception to the hearsay rule. We agree. Smith arrived at the Fletcher home immedi-

ately after he received notification of the accident. He was the superintendent of the Water, Light and Bond commission for the City of Fitzgerald and was there in an official capacity to investigate the accident. Hearsay statements made to an investigating officer shortly after the incident are part of the *res gestae* and are admissible at trial. *Powell v. Jackson,* 142 Ga. App. 34, 35 (234 SE2d 837) (1977); *Land v. McClure,* 135 Ga. App. 243, 244 (2) (217 SE2d 600) (1975).

In interpreting whether hearsay statements fall within the *res gestae* exception as defined in OCGA § 24-3-3, this court has noted that such declarations, "must be contemporaneous with the main fact, but need not be precisely concurrent in point of time[;] it is sufficient if such declarations spring out of the transaction, if they elucidate it, if voluntary and if made at such time as reasonably to exclude the idea of design." *Nasworthy v. State,* 169 Ga. App. 603, 604. (2) (314 SE2d 446) (1984); *Taylor v. State,* 176 Ga. App. 567, 573 (4) (336 SE2d 832) (1985).

Although admissible, it should be noted that the absence of objection does not increase the probative value of hearsay evidence. *Gallman v. State,* 127 Ga. App. 849, 852 (4) (195 SE2d 187) (1973). Nevertheless, there was sufficient evidence of assumption of the risk and the charge was properly given.

4. Finally, appellant contends that the trial court erred in allowing evidence, over objection, that neither Brown nor Jarchow gave notice to the defendant utility that they would be working on the Fletcher roof near appellee's energized utility line. This problem too, will likely arise again.

OCGA § 46-3-33 requires that a person responsible for work to be done within eight feet of high voltage electrical lines notify the owner or operator of such lines of his intention to perform the work. The owner or operator shall thereupon be responsible for completion of safety measures as required by OCGA § 46-3-32.

Appellant relies on *Malvarez v. Ga. Power Co.,* 250 Ga. 568, 569 (300 SE2d 145) (1983), which held that an injured party is not barred from recovery by his failure to give notice (pursuant to OCGA § 46-3-33), if the injury is caused by negligent installation or maintenance of the high voltage lines. Prior to *Malvarez,* the failure to notify the utility company was an absolute bar to recovery.

Appellee concedes that because appellant adduced evidence at trial that the high voltage lines were negligently installed or maintained, appellant was not required to give notice to the defendant. No such charge was requested, nor was it argued that OCGA § 46-3-33 mandated notice under the facts of this case.

Any evidence is relevant which logically tends to prove or disprove a material fact which is at issue in the case; and every act or circumstance serving to elucidate a material issue is relevant. *Owens*

*v. State*, 248 Ga. 629, 630 (284 SE2d 408) (1981). The evidence of appellant's failure to take precautions was relevant to the appellee's defense of failure to exercise ordinary care for his own safety and thus was admissible.

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

DECIDED FEBRUARY 4, 1986 —
REHEARING DENIED FEBRUARY 18, 1986 —

*Glenn Whitley*, for appellant.
*Richard D. Hall, John T. Croley, Jr.*, for appellee.