A93A2228. CENTRAL OF GEORGIA RAILROAD COMPANY
v. CARTER.
(442 SE2d 269)

Pope, Chief Judge.

Plaintiff, a railroad worker, brought this action under the Federal Employers' Liability Act (FELA), 45 USCA § 51, for injuries sustained as the result of defendant's alleged violation of the Automatic Coupler Act, 45 USCA § 2, a section of the Safety Appliance Act, 45 USCA §§ 1-43a. Defendant appeals from a judgment entered on a jury verdict for plaintiff in the amount of $1,025,645.20-$862,382 in special damages and $163,363.20 in general damages.

At the time of his accident, plaintiff had been working for defendant railroad for more than 20 years and was very skilled at his job. One of his work duties was the uncoupling of train cars. This is done by jogging alongside a slowly moving train and grabbing and pulling a device called a cutlever, which releases the pin holding the cars together. Evidence showed that on the morning of plaintiff's accident, the cutlever did not release when plaintiff pulled it, even though the cars were moving at the proper speed and plaintiff exerted reasonable effort. The effect of the cutlever's failure to release was to jerk plaintiff's body, causing him some back pain, which he mentioned to his co-workers at lunch. Plaintiff did not think the pain was an indication of any real injury, however, and did not report the injury or the problem with the cutlever to management. Although plaintiff continued to work that day, he could hardly move the next morning. He went to the emergency room and was subsequently hospitalized. He tried traction and physical therapy, but eventually had to have surgery. Although plaintiff is better, he will never again be able to do railroad work, the only work he has done as an adult. He is capable of performing work which does not require lifting, bending or sitting for long periods of time, but his efforts to find such work have been unavailing. He continues to look, but he is in his mid-forties, has no college and no job skills, and now has a history of back problems which he must disclose on any job application.

1. Defendant first contends that the trial court's jury instruction regarding what plaintiff had to show to establish a violation of the Automatic Coupler Act was erroneous. The court told the jury "the plaintiff must prove that the automatic coupler device did not work in the manner it was designed to operate when reasonable effort was made in the proper manner of operating it, or the plaintiff must prove that the automatic coupler device was defective." Specifically, defend-

ant asserts that the court should have used "and" rather than "or" to join the two clauses, and that its failure to do so required the jurors to find a violation of the Act if they believed the cutlever did not work on this one occasion, even if they concluded that the cutlever device in question was not actually defective.

The Automatic Coupler Act provides: "It shall be unlawful for any railroad to haul or permit to be hauled or used on its line any car not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." 45 USCA § 2. If a railroad's coupling or uncoupling equipment does not meet the requirements of this Act and a worker is injured as a result, the railroad is automatically liable for damages. *O'Donnell v. Elgin, J. & E. R. Co.*, 338 U. S. 384 (70 SC 200, 94 LE 187) (1949); *Coleman v. Burlington Northern*, 681 F2d 542 (8th Cir. 1982). It is error to instruct the jury that the failure of a device to operate on one occasion is conclusive evidence that the Act has been violated, see, e.g., *Devaney v. Atchison, T. & S. F. R. Co.*, 27 P2d 635 (Cal. 1933), for the railroad may defend the action by showing that the equipment was fine but did not operate properly on this occasion because the devices were not operated in the proper manner. See *Reed v. Philadelphia &c. R. Co.*, 939 F2d 128 (3rd Cir. 1991) (defendant may defend on grounds device failed to operate because cars were not properly positioned); *McCalley v. Seaboard C. L. R. Co.*, 252 S2d 275 (Fla. Dist. Ct. App. 1971), rev'd on other grounds, 265 S2d 11 (Fla. 1972) (defendant may defend on grounds device failed to operate because of inadequate slack in line). But see *Leveck v. Consolidated Rail Corp.*, 498 NE2d 529 (Ill. App. 1986) (railroad absolutely liable where equipment fails to operate, even if failure is caused by improper position of cars). But if the railroad is unable to show that the failure was due to improper operation, the one incident of failure does establish a violation of the Act as a matter of law. See *Cobb v. Union R. Co.*, 318 F2d 33 (6th Cir. 1963). In this case, defendant presented evidence suggesting that the failure of the cutlever device in this case may have been caused by an improper amount of slack in the line. We think the trial court's instruction that a violation would be established if the device failed to release when operated in a proper manner adequately conveyed the law as applied to this case: if the failure to operate was due to an improper amount of slack in the line, the failure to release did not establish a violation, but if the slack in the line was proper and the device still failed to operate, the failure did establish a violation. See also *Burho v. Minneapolis S. L. R. Co.*, 141 NW 300 (Minn. 1913) (a device which fails to work when reasonable effort is made to operate it in proper manner does not comply with requirements of Act). It is possible that an instruction giving further explanation might have been preferable. Because defendant

submitted no written requests to charge, however, it cannot now complain about an adequate charge on the grounds that further explanation was desireable. See *Elam v. Atlantic C. L. R. Co.*, 115 Ga. App. 656 (4) (155 SE2d 644) (1967).

2. Defendant next argues that the trial court erred in granting plaintiff's motion in limine excluding evidence that plaintiff had been discharged by defendant for reasons other than his physical inability to work. As a result, defendant argues, the jury inflated their evaluation of plaintiff's damages based on the assumption that plaintiff would have continued to work for the railroad had this accident not occurred. Contrary to defendant's assertion, however, the trial court did not grant a motion in limine precluding such evidence. Instead, the trial court granted a motion in limine requiring defendant to approach the bench if and when it wished to introduce such evidence, and the matter would "be dealt with as it comes up." Defendant never tried to introduce evidence of plaintiff's discharge, so the matter was never decided by the trial court. In any case, defendant's premise that the fact of discharge is relevant to lessen plaintiff's damages is faulty. The record reveals that after plaintiff filed his claim against defendant, defendant took the position that plaintiff's claim was without basis and fired him for filing it. Thus, the discharge clearly resulted from plaintiff's accident and resulting back injury, even if it was not based on plaintiff's physical inability to perform the job.

3. Defendant's contention that a new trial is necessary because the jury's verdict is grossly excessive is also without merit. In FELA cases, " '[t]he jury's determination of the amount of damages to be awarded is . . . inviolate, "absent an award so excessive or inadequate as to shock the judicial conscience and raise an irresistible inference that passion, prejudice or another improper cause invaded the trial." ' [Cit.]" *Southern R. Co. v. Minor*, 196 Ga. App. 183, 185 (4) (395 SE2d 845) (1990). Because "[q]uestions as to the proper measure of damages in FELA cases are governed by general principles of law established by the federal courts," the revision of OCGA § 51-12-12 in 1987[1] did not modify the principles applicable to FELA cases. Id. And contrary to defendant's assertion, this standard is the same regardless of whether it is being applied by a trial court on motion for new trial or by the appellate court on appeal. The verdict in this case is not shocking and is consistent with the preponderance of evidence in the case. Indeed, the amount awarded in special damages is exactly what plaintiff's economist — the only witness who testified about damages

---

[1] As part of the 1987 Tort Reform Act, the Georgia Legislature provided in OCGA § 51-12-12 (a) that the trial court could interfere with the jury's verdict if it is so excessive as to be inconsistent with the preponderance of the evidence in the case; an inference of gross mistake or undue bias is no longer necessary in cases based on state tort law.

— said plaintiff's damages would be if plaintiff is unable to obtain any other employment. Although there was evidence that plaintiff is physically able to perform work which does not require lifting, bending or sitting for long periods of time, there was also evidence tending to show that it will be quite difficult if not impossible for him to find such work.

4. Defendant next contends that the special damages verdict was improper because the verdict form indicated the special damages were "lost wages" and the figure awarded included the value of lost health and pension benefits as well as actual wages. As lost benefits are special damages which go along with lost wages as part of lost income, this enumeration of error is patently without merit.

5. Lastly, the trial court did not err in admitting the medical record from Dr. Roy as an exception to the hearsay rule pursuant to OCGA § 24-3-4.

*Judgment affirmed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED MARCH 8, 1994 —
RECONSIDERATION DENIED MARCH 23, 1994 — 

*Farkas & Ledford, Leonard Farkas, Hall, Bloch, Garland & Meyer, F. Kennedy Hall, J. Steven Stewart,* for appellant.
*Burge & Wettermark, Michael J. Warshauer,* for appellee.