## A94A2024. WALLACE v. THE STATE.
### (455 SE2d 615)

RUFFIN, Judge.

Donald Wallace appeals from the judgment entered on the jury's verdict finding him guilty of the offenses of aggravated assault (OCGA § 16-5-21) and possession of a firearm during the commission of a crime (OCGA § 16-11-106). In bifurcated proceedings, Wallace was also convicted of possession of a firearm by a convicted felon (OCGA § 16-11-131) and two counts of recidivism (OCGA § 17-10-7). He was sentenced to serve consecutive terms totaling 30 years in prison.

Viewed in a light to support the verdict, the evidence at trial was that on the night of June 12, 1993, Joe Jones accompanied Cathy Graham in her car to purchase beer. En route to the store, Ms. Graham spotted the defendant's truck at an intersection. When Graham stopped at the intersection, Wallace walked to the passenger side of Graham's vehicle, opened the door, put a gun to Jones' head and fired, saying that Jones was "in the wrong place at the wrong time." The bullet exited Jones' head and was later retrieved from the floorboard of Graham's car. Graham drove to a nearby store and dialed "911" to report the shooting. Her identification and descriptions of Wallace and his truck were conveyed to the Floyd County police officers dispatched in response to the call. After Detective Jerry Boyd interviewed Graham, he discovered blood inside the car and a bullet on the passenger side floorboard.

Shortly before trial, Graham married Wallace and, outside the presence of the jury, invoked the marital privilege and refused to testify against him. At trial, the 911 dispatcher, Nell Reagan, testified that Graham told her Wallace was the shooter and described him, the clothes he was wearing and the vehicle he was driving. Sergeant George Lemming testified that, acting on information supplied by Graham, he found Wallace's truck parked at his mother's home. The hood was hot, but Wallace was not at the house. He then went to a nearby bar, the Starlight Club, where he found and arrested Wallace dressed as Graham described him.

At trial, none of Wallace's three alibi witnesses testified that Wallace had been at the Starlight Club all night. The State called a rebuttal witness, Thomas Dotson, who testified that on the night of the shooting, he saw Wallace come into the Starlight Club shortly before the police arrived. Wallace told Dotson that if the police came in asking about him, to say that Wallace had been at the club all

night. Dotson also testified that Wallace arrived with blood under his fingernails and claimed that he "got into it with some boy at a store."

1. In his first three enumerations of error, Wallace attacks the sufficiency of the evidence of aggravated assault and contends the court erred in refusing to direct a verdict on that charge because the indictment does not specifically set forth how Wallace assaulted the victim and because there is no evidence Wallace possessed a handgun.

" 'The general rule that allegations [in an indictment] and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.' . . . [Cit.]" *DePalma v. State*, 225 Ga. 465, 469 (3) (169 SE2d 801) (1969). The instant indictment tracked the language of OCGA § 16-5-21 in alleging that Wallace made "an assault upon the person of Joe Jones, with a handgun, a deadly weapon." This language is not too vague to inform the accused of the charges against him. See *Haisman v. State*, 242 Ga. 896 (1) (252 SE2d 397) (1979). The evidence at trial was that Wallace shot Jones in the head. While Jones did not testify that he saw the gun, he saw a flash and the bullet that passed through his head was recovered from the floorboard of the car where he was sitting. Viewing this evidence in a light most favorable to the verdict, it was sufficient for any rational trier of fact to find Wallace guilty of aggravated assault and possession of a handgun beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Wallace next enumerates as error the court's admission of hearsay testimony from the 911 operator Reagan and Detective Boyd.

"OCGA § 24-3-1 (b) provides that 'hearsay evidence is admitted in specified cases from necessity.' . . . 'The two underlying reasons for any exception to the hearsay rule are a necessity for the exception and a circumstantial guaranty of the trustworthiness of the offered evidence — that is, there must be something present which the law considers a substitute for the oath of the declarant and his cross examination by the party against whom the hearsay is offered.' [Cits.]" (Emphasis omitted.) *Higgs v. State*, 256 Ga. 606, 607 (3) (351 SE2d 448) (1987). "In this case, [Cathy Graham] was unavailable as a witness because of her [marriage to Wallace after the shooting] and because [she refused] to testify against him. OCGA § 24-9-23. There was, indeed, a 'necessity' that the [jury] be acquainted with the statements of the only eyewitness [to the shooting besides Jones, whose contemporaneous perceptions were obviously less detailed and complete than Graham's]." (Emphasis omitted.) Id. at 608. Graham's statements to the 911 operator, Reagan, are trustworthy because she

made them within minutes of the shooting. Her statements to Detective Boyd in the course of his official investigation provide similar indicia of reliability. Moreover, Graham never disavowed or retracted her statements to Reagan or Detective Boyd. See id. Under these circumstances, the trial court correctly ruled that Graham's statements to 911 dispatcher Reagan and Detective Boyd were admissible as an exception to the general hearsay rule. Id.

3. Wallace next enumerates as error the court's allowing the State to call Thomas Dotson as a rebuttal witness when his name was not provided in response to counsel's request in advance of trial. However, "[t]he State's need to call [Dotson] for rebuttal did not arise until [the defense put up evidence that Wallace was at the Starlight Club at the time Jones was shot], and there is no requirement to give the defendant the names of witnesses who will be used in rebuttal unless the State knows the witness will be called. [Cit.]" *Etheridge v. State*, 210 Ga. App. 96, 99 (3) (435 SE2d 292) (1993).

4. Wallace contends the court erred by refusing to give an orally requested charge on prior inconsistent statements. He argues that because Jones' testimony at trial was inconsistent with testimony he gave at an earlier hearing, the court erred in failing to give the requested charge. Even if such a charge were appropriately adjusted to the facts in this case, the " '[f]ailure to charge in the absence of a written request is not such a substantial error as to be harmful as a matter of law. . . . Furthermore, it should be noted that the court below charged the principles of law relating to credibility [and impeachment] of witnesses generally. Under those circumstances the failure to include (a charge) [on prior inconsistent statements as substantive evidence] in the absence of written request is not error. ... .' [Cits.]" *Williamson v. State*, 188 Ga. App. 307, 309 (4) (372 SE2d 685) (1988).

5. Finally, Wallace's contention that the court incorrectly applied the sentencing provisions for recidivists is without merit. Under the general recidivist statute, OCGA § 17-10-7 (a), the trial court was required to sentence Wallace to the "longest period of time prescribed for the punishment" of aggravated assault (20 years under OCGA § 16-5-21 (b)); for possession of a firearm during the commission of a felony (five years under OCGA § 16-11-106 (b)); and for possession of a firearm by a convicted felon (five years under OCGA § 16-11-131 (b)). Wallace received consecutive sentences totaling 30 years. "It follows that the sentence imposed is within the limits prescribed by law." *Getty v. State*, 207 Ga. App. 736, 738 (429 SE2d 100) (1993).

Under OCGA § 17-10-7 (a) the sentencing judge was also authorized to exercise his discretion, once the sentences were imposed, to probate or suspend the maximum sentences, but the record reveals he elected not to do so in this case. "It is only where the trial court has a

legal discretion to exercise but fails to do so, instead resting the decision upon an erroneous point of law, that reversal must follow. In the absence of any affirmative showing to the contrary, the trial court is presumed to have exercised its discretion in imposing appellant's sentence. [Wallace] [has] no viable cause for complaint that, in the exercise of its discretion, the trial court declined to probate or suspend a portion of the recidivist sentence." (Citations, punctuation and emphasis omitted.) *Cox v. State*, 205 Ga. App. 375, 376 (2) (422 SE2d 68) (1992).

6. We do not consider Wallace's untimely supplemental enumerations of error filed pro se on November 18, 1994. "This appeal was docketed on [June 2, 1994], and [Wallace] was required to file any enumerations of error within 20 days of that date. An enumeration of error may not be amended after the original filing time has expired. [Cits.]" *Parham v. State*, 166 Ga. App. 855, 856 (2) (305 SE2d 599) (1983).

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MARCH 17, 1995.

*Garner & Barnes, Richard E. Barnes*, for appellant.
*Stephen F. Lanier, District Attorney, Tambra P. Colston, Assistant District Attorney*, for appellee.