A97A1743. LANE v. TIFT COUNTY HOSPITAL AUTHORITY.
(492 SE2d 317)

ELDRIDGE, Judge.

On July 22, 1992, William Frank Lane, now deceased, told his wife that he had fallen at home and showed confusion. Late that evening Lane was admitted to Tift General Hospital for diagnostic purposes. Upon admission, Lane had mild pain and was x-rayed in the early morning of July 23, 1992; such initial x-rays showed no fracture. Prior to the x-ray examination, Lane had movement in his extremities without limitation, could speak with a normal voice, could sit up in bed, and appeared neurologically intact. After the return from the second x-ray session in the afternoon of July 23, 1992, Lane spoke only in a whisper, had no control over his extremities, and showed observable indications of pain. When his wife, appellant Mary Sumner Lane, asked him what was wrong with him, Lane stated that he had been dropped by two black men. After it was reported that Lane had been dropped, a CT scan of the cervical spine was ordered by Dr. Gerald L. Sapp, and it revealed that Lane had sustained a broken neck. Dr. Sapp and appellant had Lane transferred to Palmyra Medical Center in Albany as a result of the injuries revealed by the CT scan.

Appellee's employee, radiology technologist Robert Price, testified that at 12:17 a.m., he attempted to take x-rays of Lane, who seemed confused; muscle spasms caused suboptimal x-ray results. Price did not state who brought Lane to x-ray from the emergency room; all he could testify to was that he did not drop Lane or see

Lane dropped. Radiology technologists Brenda Brett, Sharon Connell, and Eloise Nipper all testified by affidavit that, at 2:35 p.m. on July 23, 1992, Lane was brought to x-ray again by undisclosed hospital personnel in an undisclosed manner, where he was x-rayed without being dropped; that he was confused and suffered muscle spasms; and that they did not see Lane dropped or drop him. They did not disclose how he was transported to his room or what, if anything, the x-rays showed.

Lane's discharge summary was read into the depositions of his son, Ronnie Lane, and appellant by appellee's counsel as part of a question to them; the report indicated that neither Dr. Sapp nor Dr. Shah found any fracture on the x-rays taken of Lane while he was in appellee's custody. Appellee tendered the depositions of both appellant and Ronnie Lane into evidence in support of the motion for summary judgment.

Lane appeared lucid, oriented, and coherent prior to his admission to Palmyra Medical Center from Tift General Hospital. Dr. Sapp and Lane's daughter, who is Dr. Sapp's wife, both testified that Lane exhibited mental confusion and that at the time of the x-rays on July 22, 1992, Lane had received demerol which "in all likelihood would alter the patient's mental abilities."

On July 22, 1994, after the death of Lane, appellant brought suit for personal injuries and wrongful death against Tift General Hospital as widow and executrix of Lane's estate. This suit alleged that Lane died on November 30, 1992, as a proximate cause of injuries incurred while he was a patient of appellee.

On August 9, 1996, appellee Tift County Hospital Authority filed a motion for summary judgment and filed the affidavits of several employees of the x-ray department who denied having dropped Lane during their shifts. On February 21, 1997, the trial court granted summary judgment. On March 7, 1997, appellant filed her notice of appeal.

1. Appellant's enumeration of error is that the trial court erred in granting the summary judgment. We agree and reverse.

(a) In the case sub judice, appellee failed to pierce the appellant's pleadings that x-rays taken of Lane July 22, 1992, showed no fracture. Although appellee in its answer admits that the x-rays were inconclusive, revealing no fracture, the complaint alleged that a CT scan made subsequent to July 23, 1992, showed a fracture of Lane's neck. None of the affidavits of the radiology technologists stated what was shown on the July 23, 1992 x-rays. While appellee offers the affidavit of Dr. Sapp, Lane's treating physician, his affidavit did not state that, in his opinion, the sole proximate cause of Lane's fractured neck was a fall at home, nor did it state that the x-rays taken on July 22, 1992, or on July 23, 1992, were inconclusive. As pled, the

x-rays of July 22, 1992, negate any reasonable inference that the fractured neck was a prior existing injury, which leaves a reasonable, favorable inference to be drawn from the existence of the fractured neck: that such fracture occurred while Lane was under the care and control of the appellee. Appellee's evidence does not address the issue of when, where, how, or who caused such fracture, which appellee had not found on July 22, 1992. Such evidence merely shows that, if any injury occurred to Lane, then it did not occur in the x-ray department on their watch. However, such evidence fails to negate the favorable inference that must be drawn that the fracture occurred sometime while Lane was under appellee's care and control after the x-rays were taken on July 22, 1992.

Further, Dr. Sapp admitted Lane to appellee's care while Lane was in a confused mental state, and the doctor administered demerol to Lane, which would "alter the patient's mental abilities"; such known condition of Lane created a duty that the appellee exercise reasonable care to watch Lane in order to ensure that he did not fall or hurt himself in such confused state. Thus, the favorable inferences that must be made in favor of appellant by the trial court on summary judgment are that, while under the exclusive control of appellee, the deceased broke his neck either by being dropped by appellee's employees other than the radiology technologists, as alleged, or by falling in the hospital while appellee's employees were not watching this mentally confused patient. Under either favorable inference, there exists a factual question for jury determination, and summary judgment should have been denied.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. See, e.g., *Holiday Inns v. Newton*, 157 Ga. App. 436 (278 SE2d 85) (1981). A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case." (Emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Appellee, the moving party, failed to meet its burden. "On a motion for summary judgment the burden of establishing the non-existence of any genuine issue of fact is upon the moving party and all doubts are to be resolved against the movant. The movant has that burden even as to issues upon which the opposing party would have the trial burden." *Ham v. Ham*, 230 Ga. 43, 45 (195 SE2d 429) (1973); see also *Sawgrass Builders v. Key*, 212 Ga. App. 138 (441 SE2d 99) (1994); *Huntington v. Fishman*, 212 Ga. App. 27, 29-31 (441 SE2d 444) (1994). Appellant pled that the x-rays showed no fracture, and appellee admitted that the x-rays were inconclusive. Appellee could neither admit nor deny that Lane had a fracture of the neck at either time he was x-rayed.

"Nothing in *Lau's Corp.* [*v. Haskins*, supra at 491], however, places a burden on a plaintiff to respond to issues which are not raised in the motion for summary judgment or to present its entire case on all allegations in the complaint — even on issues not raised in the defendant['s] motion. Indeed, until appellees pierced the allegations of [appellant's] complaint on a particular issue, [she] was neither required to respond to the motion on that issue ([cits.]), nor required to produce evidence in support of [her] complaint on that issue. [Cits.] The issues that must be rebutted on motion for summary judgment are those raised by the motion. Consequently, [appellant] was not required to present proof on all matters raised in [her] complaint until appellees pierced [her] complaint on those issues." *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 690 (458 SE2d 876) (1995). Allegations of a complaint must be taken as true on motion for summary judgment unless the movant successfully pierces the allegations so as to show that no material issue of fact remains as to an essential element of the cause of action. *Sapp v. ABC Credit &c. Co.*, 243 Ga. 151 (253 SE2d 82) (1979); *Joiner v. Mitchell County Hosp. Auth.*, 125 Ga. App. 1 (186 SE2d 307) (1971), aff'd, 229 Ga. 140 (189 SE2d 412) (1972); *Alexander v. Boston Old Colony Ins. Co.*, 127 Ga. App. 783 (195 SE2d 277) (1972). The respondent is to be given the benefit of all reasonable doubts in determining whether a genuine issue of fact exists, and the trial court must give the respondent the benefit of all favorable inferences that may be drawn from the evidence. *Smith v. Sandersville Production Credit Assn.*, 229 Ga. 65 (189 SE2d 432) (1972); *Barber v. Perdue*, 194 Ga. App. 287 (390 SE2d 234) (1989); *Holland v Sanfax Corp.*, 106 Ga. App. 1 (126 SE2d 442) (1962).

(b) Under OCGA § 24-3-14, medical records made in the ordinary course of treatment come within the business record exception to the hearsay rule, which exception makes the portion of the appellant's and her son's depositions containing the report of Dr. Shah and the discharge summary of Lane admissible in evidence. Generally, even

under this exception, medical opinions are not admissible; normally those portions of medical or hospital records containing opinions must be redacted. However, under OCGA § 24-3-4, statements made incident to medical diagnosis or treatment constitute exceptions to the hearsay rule as to the content of Lane's medical records, as well as to evidence of his broken neck. Likewise, appellee's introduction of such depositions without objection or limited admission waives any objection to the opinion evidence or lack of foundation for expert opinion. See generally *Central Ga. R. Co. v. Carter*, 212 Ga. App. 528 (442 SE2d 269) (1994); *Stoneridge Properties v. Kuper*, 178 Ga. App. 409 (343 SE2d 424) (1986). Further, appellee introduced the depositions containing such matter without objection or limitation as to the purpose, so that objections as to the lack of foundation or the opinion nature of the evidence are waived. See generally *Meeks v. Lunsford*, 106 Ga. App. 154 (126 SE2d 531) (1962); *Knudsen v. Duffee-Freeman, Inc.*, 95 Ga. App. 872 (99 SE2d 370) (1957). Since appellee placed the evidence before the trial court without objection, then any issue as to admissibility is waived. *Williams v. Mem. Med. Center*, 218 Ga. App. 107, 108 (2) (460 SE2d 558) (1995); see also *David Shapiro & Co. v. Timber Specialties*, 141 Ga. App. 354 (1) (233 SE2d 439) (1977).

Under OCGA § 24-3-33, tender into evidence by appellee's counsel of the discharge summary of Lane and of the depositions constitutes an admission of the probativeness, accuracy, and authenticity of such discharge summary as evidence. See generally *W. T. Harvey Lumber Co. v. J. M. Wells Lumber Co.*, 104 Ga. App. 498 (122 SE2d 143) (1961); *NAACP v. Pye*, 96 Ga. App. 685 (101 SE2d 609) (1957); *Everitt v. Harris*, 67 Ga. App. 64 (19 SE2d 545) (1942). Thus, there is evidence in the record from which favorable inferences may be drawn regarding the absence of evidence of a broken neck on the x-ray and examination at the time of admission and a broken neck found subsequent to the discharge after July 23, 1992.

(c) "[I]t is well established that a hospital owes a duty to a pay patient to exercise such reasonable care in looking after and protecting the patient as his condition, known to the hospital through its agents and servants charged with the duty of looking after and supervising him, may require, but the hospital is not an insurer of the patient's safety. [Cits.]" *Hosp. Auth. of St. Marys v. Eason*, 222 Ga. 536, 539 (150 SE2d 812) (1966); *Macon-Bibb County Hosp. Auth. v. Appleton*, 123 Ga. App. 445, 450 (2) (181 SE2d 522) (1971). "A [hospital receiving payment for a private patient] in which patients are placed for treatment by their physicians, and which undertakes to care for the patients and supervise and look after them, is under a duty to exercise such reasonable care in looking after and protecting the patient as the patient's condition, which is known to the hospital through its agents and servants charged with the duty of looking

after and supervising the patient, may require. This duty extends to safeguarding and protecting the patient from any known or reasonably apprehended danger from himself which may be due to his mental incapacity, and to use ordinary and reasonable care to prevent it. [Cits.]" *Emory Univ. v. Shadburn*, 47 Ga. App. 643 (1) (171 SE 192) (1933), aff'd, 180 Ga. 595 (180 SE 137) (1935); see also *Deese v. Carroll City County Hosp.*, 203 Ga. App. 148, 149 (1) (416 SE2d 127) (1992); *Doctors Hosp. of Augusta v. Poole*, 144 Ga. App. 184 (1) (241 SE2d 2) (1977); *Bulloch County Hosp. Auth. v. Fowler*, 124 Ga. App. 242, 246 (1) (183 SE2d 586) (1971), overruled on other grounds, *Gilson v. Mitchell*, 131 Ga. App. 321 (205 SE2d 421) (1974). For purposes of the requirement of medical expert testimony and not in determining the duty of care, "[t]he protection of patients is not a medical function of a hospital; rather, it is a service provided by a hospital to its patients." *Johnson v. Wills Mem. Hosp. &c.*, 178 Ga. App. 459, 461 (2) (343 SE2d 700) (1986); see also *Candler Gen. Hosp. v. McNorrill*, 182 Ga. App. 107, 110 (2) (354 SE2d 872) (1987); see generally *Lamb v. Candler Gen. Hosp.*, 262 Ga. 70, 71 (1) (413 SE2d 720) (1992); *Moore v. Louis Smith Mem. Hosp.*, 216 Ga. App. 299 (454 SE2d 190) (1995); *Smith v. North Fulton Med. Center*, 200 Ga. App. 464, 465-466 (1) (408 SE2d 468) (1991); *Flowers v. Mem. Med. Center*, 198 Ga. App. 651, 652 (402 SE2d 541) (1991). Therefore, a jury issue exists as to whether appellee used ordinary and reasonable care in serving Lane as a patient.

The trial judge erroneously granted summary judgment when there existed material issues of fact as to appellee's liability.

2. Appellant's other enumeration of error is that the trial court erred in granting appellee's motion for summary judgment, as the decedent's declaration that he had been dropped while in the appellee's hospital is admissible under the two-prong test for the necessity exception to the hearsay rule. We agree. Since the case is reversed, we decide this issue as guidance in subsequent proceedings.

OCGA § 24-3-4 provides that statements made for purposes of medical diagnosis and treatment are admissible as an exception to the hearsay exclusion. Clearly, Lane's statement that "two black men dropped [him]" when he was sent for x-rays caused him to subsequently undergo a CT scan, which revealed a broken neck, and resulted in his transfer to Palmyra Medical Center in Albany for treatment. See *Southern R. Co. v. Lawson*, 256 Ga. 798 (353 SE2d 491) (1987); *Central of Ga. R. Co. v. Carter*, supra; *Allen v. State*, 174 Ga. App. 206 (329 SE2d 586) (1985); *Sparks v. State*, 172 Ga. App. 891 (324 SE2d 824) (1984); *Davis v. State*, 168 Ga. App. 272 (308 SE2d 602) (1983).

The trial court used hearsay statements made by the decedent, which indicated his mental state by the content of the statements, to

determine the reliability of Lane's claim; the trial judge made a determination as to the weight and credibility of Lane's statements, instead of leaving such determination to the jury to decide weight and credibility. See *Griffin v. Bremen Steel Co.*, 161 Ga. App. 768, 772 (2) (288 SE2d 874) (1982); *Raven v. Dodd's Auto Sales & Svc.*, 117 Ga. App. 416, 421 (3) (160 SE2d 633) (1968); *Marietta Intl. Sales v. Federated Mut. &c. Ins. Co.*, 122 Ga. App. 133, 134 (176 SE2d 460) (1970).

In *Swain v. C & S Bank of Albany*, 258 Ga. 547, 549-550 (372 SE2d 423) (1988), the Supreme Court held regarding the necessity exception to the hearsay exclusion "The two underlying reasons for any exception to the hearsay rule are a necessity for the exception *and a circumstantial guaranty of the trustworthiness of the offered evidence* — that is, there must be *something present which the law considers a substitute for the oath of the declarant and his cross examination by the party against whom the hearsay is offered. . . .* However, *the mere fact that a witness is dead does not render his declarations admissible, although,* if in addition to the death of a witness there are circumstances which attribute verity to his declarations, the hearsay rule may be relaxed to permit the admission of such declaration. It is a general rule that self-serving declarations — that is, statements favorable to the interest of the declarant — are not admissible in evidence as proof of the facts asserted, regardless of whether they were implied by acts or conduct, were made orally, or were reduced to writing. The rule which renders self-serving statements inadmissible is the same in criminal prosecutions as in civil actions. The vital objection to the admission of this kind of evidence is its hearsay character; the phrase 'self-serving' does not describe an independent ground of objection. *Such declarations are untrustworthy; their introduction in evidence would open the door to frauds and perjuries, and the manufacturing of evidence. The fact that the declarant has since died does not alter the general exclusionary rule. Chrysler Motors Corp. v. Davis,* [226 Ga. 221, 224-225 (173 SE2d 691) (1970)]. As can be seen from the preceding passage, in *Chrysler Motors* this court focused on whether the declaration was self-serving when the deceased made it, holding that it must be excluded if it was self-serving. . . . [However,] circumstances indicating that a witness has an interest in the case, as do [appellant] and her son, should merely go to the credibility of the witness, not to the admissibility of the declarant's statement. As with all questions of witness credibility, opposing counsel has the right to draw the jury's attention to these circumstances through cross-examination of the witness and argument to the jury. . . . Having determined that the self-interest of the . . . witness is not relevant to the admissibility of the declaration in question, there remains to be considered the factor of trustworthiness, under the rule enunciated in *Chrysler Motors*, supra, 226

Ga. See *Higgs v. State*, 256 Ga. 606 (351 SE2d 448) (1987). In her dissent Judge Beasley listed several elements of the record that she felt were circumstantial guarantees of the truthfulness of the declaration when the deceased made it. After examining the elements we find that taken as a whole they were sufficient to support the trial court's decision to deny the motion to exclude the declaration of the deceased." (Citations and punctuation omitted; emphasis in original.)

The first prong of the necessity exception to the hearsay rule under OCGA § 24-3-1 (b) is necessity itself. One way to satisfy the first prong is by showing that the declarant is dead, and there is no live witness at all or that the only available witness is the opposite party, who denies hearing the statement. See *Swain v. C & S Bank of Albany*, supra at 548-549; *Chrysler Motors Corp. v. Davis*, supra at 224-225; *Roper v. State*, 263 Ga. 201, 202 (2) (429 SE2d 668) (1993); *McKissick v. State*, 263 Ga. 188, 189 (3) (429 SE2d 655) (1993); *Jackson v. State*, 202 Ga. App. 582, 586 (2) (414 SE2d 905) (1992). Necessity is also satisfied where there is a live witness that cannot be compelled to testify because of an evidentiary privilege. *Higgs v. State*, supra at 607; *Patterson v. State*, 202 Ga. App. 440, 443-444 (4) (414 SE2d 895) (1992); *Glisson v. State*, 188 Ga. App. 152, 154 (2) (372 SE2d 462) (1988). When a witness cannot be found after diligent search because they are hiding to avoid testifying, necessity has been shown. *Adams v. State*, 191 Ga. App. 16, 17 (2) (381 SE2d 69) (1989). "That exception applies only when the witness is unavailable, usually because of death or in cases where the witness may not be compelled to testify, as in the case of a wife who cannot be compelled to testify against her husband." (Emphasis omitted.) *Glisson v. State*, supra at 154 (3). Refusal to testify where no privilege applies does not satisfy the necessity prong where the court has the power to force testimony. *Walker v. State*, 220 Ga. App. 80, 81 (1) (467 SE2d 388) (1996); *Glisson v. State*, supra at 154. The necessity rule does not turn on the existence of other witnesses who can testify to the substance of the out-of-court statement but to the availability of the declarant; thus, the rule of necessity applies when there is another eyewitness available to testify. See *Wallace v. State*, 216 Ga. App. 718, 719-720 (2) (455 SE2d 615) (1995). Appellant has fully satisfied the requirement of necessity.

The second prong of the rule of necessity is the particularized guarantees of trustworthiness as indicia of reliability drawn from the surrounding circumstances in place of the oath. See *Roper v. State*, supra at 202; *McKissick v. State*, supra at 189. In the case sub judice, there exist a number of indicia of reliability, which provide trustworthiness to the deceased's declaration as a substitute for the oath and which arise from the surrounding circumstances: (a) the declarant did not spontaneously make the statement but was specifically asked

by his wife, who he trusted, what had happened to him to cause his apparent physical distress; (b) the statement was made close to or during the res gestae so as to avoid the risk of long deliberation for fabrication of a claim; (c) the declarant made the statement with visible physical difficulty in speaking and while in obvious physical pain, making concentration for purposes of fabrication more difficult; (d) the statement was factually short, responsive, rational, oriented to time and place, and simple in relationship to where he had just been; (e) the statement indicated the immediate urgency for medical assistance, which had not previously existed with such degree; (f) the statement when subsequently made to others on inquiry was consistent each time and never retracted or qualified; (g) subsequent statements were not spontaneously uttered to everyone who would listen, as if fabricating a claim, but were made in response to a specific inquiry as to what happened; (h) Lane did not seek to identify specifically the perpetrators except by general description of race and gender and to claim that they were appellee's employees; (i) the subsequent CT scan corroborated that the declarant was suffering from a crippling injury that had not been detected prior to the statement; (j) the x-rays taken prior to the statement did not indicate a prior existing injury and circumstantially corroborated the statement; (k) at the time when the statement was made, the declarant gave no verbal indication of self-interest, i.e., "I'll sue," "they will pay for this," "they will have to pay my medical bills," or "y'all can sue"; (l) the manner of questioning was not leading or suggestive of a desired answer; and (m) the deceased's mental confusion both prior to and subsequent to his statement makes less likely his ability to contrive a scheme to fabricate a tort action and to maintain such claim without contradictions over the period from July 23 until November 20, 1992. See *Higgs v. State*, supra at 607-608. Such indicia of reliability from the surrounding circumstances of the case sub judice were similar in kind and nature but far more numerous than the indicia of reliability found by Judge Beasley in her dissent in *C & S Bank of Albany v. Swain*, 185 Ga. App. 881, 885 (366 SE2d 191) (1988), rev'd, *Swain v. C & S Bank of Albany*, supra. See also *Roper v. State*, supra at 203; *Mallory v. State*, 261 Ga. 625, 627-628 (2) (409 SE2d 839) (1991); *Adams v. State*, supra at 17. Had Lane lived to testify, cross-examination of him "would be of marginal utility." See *Fenimore v. State*, 218 Ga. App. 735, 737-738 (463 SE2d 55) (1995). The statement fully satisfies the requirement of trustworthiness as a matter of law, and it is for a jury to decide what weight and credibility to ascribe to such statement.

The trial court erred in excluding the deceased's out-of-court statement as not meeting the rule of necessity.

*Judgment reversed. Birdsong, P. J., and Ruffin, J., concur specially.*

BIRDSONG, Presiding Judge, concurring specially.

Although concurring in the result obtained in the disposition of this appeal, I cannot join in the legal analysis contained in Division 1 of the majority opinion, including the theory of admissibility of entries in medical records asserted therein. Moreover, I reject any legal analysis in the majority opinion which might be construed as implying that genuine issues of material fact could exist *solely* based on inferences to be drawn from the deteriorated physical and mental condition of Lane as observed upon his return from x-ray. Proof of nothing more than an unexplained physical and mental deterioration, standing alone, will not establish liability on the part of the hospital. See *Innes v. Dixie Svc. Center*, 224 Ga. App. 584, 585 (481 SE2d 572) (mere fact of injury or damage does not give rise to a presumption or inference of negligence).

The trial court held that the hearsay declaration made by Lane to his wife immediately upon his return from additional x-rays met the threshold requirement for trustworthiness and were sufficiently reliable to be presented to the jury. Although I cannot join in either the majority's or the trial court's independent analysis regarding these statements, I do find that the record provides adequate support for the trial court's ultimate ruling as to declaration reliability and, therefore, the trial court did not abuse its discretion (see *Taylor v. State*, 226 Ga. App. 339 (1) (486 SE2d 601); compare *Star Gas of Hawkinsville v. Robinson*, 225 Ga. App. 594, 597 (4) (484 SE2d 266); *Gilbert Corp. &c. v. Yetman*, 219 Ga. App. 320, 322 (2) (464 SE2d 822); *Brown v. City of Fitzgerald*, 177 Ga. App. 859, 861 (3) (341 SE2d 476)) when it in essence admitted this declaration by holding it was sufficiently reliable to be presented to the jury. *Lee v. Peacock*, 199 Ga. App. 192 (404 SE2d 473) is distinguishable. In *Lee*, supra, we were testing for an abuse of the trial court's discretion in ruling the declarations inadmissible, while in this case we are testing for an abuse of discretion as to a ruling which finds the declaration sufficiently reliable to be presented to the jury. After the trial court found the declaration to be reliable, it proceeded erroneously to shift the burden of going forward to nonmovant appellant; in doing so the trial court committed reversible error.

For the above reasons, I am compelled to join in the reversal of the judgment granting summary judgment to appellee Tift County Hospital Authority.

I am authorized to state that Judge Ruffin joins in this special concurrence.

DECIDED SEPTEMBER 17, 1997.

*O. Wayne Ellerbee, Laurie L. Paterson, Howard E. McClain*, for appellant.

*Reinhardt, Whitley & Wilmot, Robert C. Wilmot*, for appellee.