## A00A0800. BATTLE v. THE STATE.
### (536 SE2d 761)

PHIPPS, Judge.

Earkus Battle appeals his convictions of two counts of selling cocaine and one count of possession of a firearm by a convicted felon. He asserts that the trial court erred in admitting, under the necessity exception to the hearsay rule, out-of-court statements made by Avis Jones to narcotics agents Dechon Grant and Rick Galbreath. Because we find that the trial court properly admitted Jones's out-of-court statements, we affirm.

On November 8, 1996, Jones went to the Columbus Metro Narcotics Task Force office and informed Agents Grant and Galbreath that she could buy crack cocaine from several persons, including Battle. Battle then became the subject of a task force investigation. Later that same day, Grant and Galbreath placed a body wire on Jones and followed her to Battle's home, where she was to buy cocaine. After the transaction, Jones met the agents at a predetermined location and gave them cocaine. She then gave an audiotaped interview, informing Grant that she had bought the cocaine from

---

Battle. An audiotape of Jones's conversation with Battle captured her asking him to sell her cocaine, but it did not record direct evidence that a sale actually occurred.

Later that day, Jones was sent back to Battle's apartment to buy more cocaine. Agents again audiotaped Jones's conversation with Battle via body wire. After leaving Battle, Jones turned over more cocaine to the agents and gave another audiotaped interview, this time with Galbreath. Again, she identified the seller as Battle. The audiotape of Jones and Battle's conversation captured Battle agreeing to sell Jones more cocaine; like the first tape, it did not record direct evidence that the sale was completed. On November 22, 1996, agents arrested Battle for the two November 8 sales.

In late December, Jones called the task force office, and Grant and Galbreath went to her home to meet with her. She told them that she had received threatening phone calls from Battle and that he knew she had turned him in. Shortly before Grant and Galbreath had arrived at Jones's home, Battle had called her and asked her to "go off and ride with him for a few minutes to . . . maybe try and work this thing out. . . ." To Grant, she appeared to be very frightened. She indicated that based upon the type of person she knew Battle to be, she believed he would harm her; he knew where she lived; and she had seen his car twice in the vicinity of her home. She stated that she might leave the area if the situation continued. Grant and Galbreath encouraged her not to leave, saying they would do everything in their power, including house checks, to make sure she was safe.

On March 13, 1997, Battle was indicted. On March 27, he filed a waiver of arraignment and demand for list of witnesses. The next day, the State mailed Battle a witness list. Jones was not listed as a witness because the State intended to protect her identity unless disclosure became necessary for trial.

The case was placed on a trial docket for April. Initially, the parties engaged in plea negotiations, and both sides were hopeful that a plea bargain would be struck. However, the parties were not able to reach an agreement. The case remained on trial dockets for June, July, and August without being called to trial. By September, the State's attorney had become concerned that a plea bargain would not be reached and that the case would be called to trial soon.

Until then, the State's attorney had not known Jones's identity. She asked Grant for that information in September and asked him to locate Jones and make sure that she was still available to testify.

Around September 23, 1997, Grant and Galbreath went to Jones's home. Jones's mother informed them that Jones had moved to Hot Springs, Arkansas, and she gave them her phone number and address there. Shortly thereafter, Grant contacted Jones by phone.

Jones stated that she was willing to testify and would return to Columbus to do so if needed. Jones also agreed to call the State's attorney regarding the case.

Grant gave the State's attorney Jones's Arkansas phone number and address. On September 24, the State's attorney sent a letter to Battle's attorney notifying him that the State planned to call Jones as a witness and providing Jones's Arkansas address.

Jones never called the State's attorney. The State's attorney placed several calls to Jones's phone number in Arkansas, but Jones did not return her calls.

Several days after he had spoken with Jones, Grant attempted to call her again to make sure that she was still willing to contact the prosecutor and return to testify. Her phone had been disconnected or was out of service. Grant then spoke with a sheriff's deputy in Arkansas about locating Jones.

On October 6, the State's attorney mailed to the Hot Springs, Arkansas prosecutor's office a summons for Jones and a proposed order declaring her a material witness and ordering that she be taken into custody and delivered to Georgia law enforcement authorities. On November 7, a representative of the Arkansas prosecutor's office wrote to the State's attorney that the sheriff's department was "unable to effectuate service on Avis Jones."

Grant went to Jones's home in Columbus several more times. Each time, he was told by her relatives that she had not returned to Columbus, that they did not know her whereabouts, and that they had not heard from her. Grant's last visit to Jones's home was on February 17, 1998.

At a hearing the next day, the court ruled that it would admit Jones's out-of-court statements under the necessity exception to the hearsay rule. Battle was tried beginning March 18. Jones's taped statements were admitted and played for the jury. Battle asserts the court erred in admitting the statements because the State did not exercise sufficiently diligent efforts to secure live testimony from Jones.

OCGA § 24-3-1 (b) provides that "[h]earsay evidence is admitted only in specified cases from necessity." For the necessity exception to apply, there must be a necessity for the admission of the statement, and the statement must be attended by particularized guarantees of trustworthiness.[1] The "necessity" requirement includes three components: (1) that the declarant of the statement be unavailable to testify; (2) that the statement be relevant to a material fact; and (3) that the statement be more probative of that material fact than other evi-

[1] *Mallory v. State*, 261 Ga. 625, 627 (2) (409 SE2d 839) (1991).

dence that might be procured and offered.[2] If the declarant is alive and her testimony is compellable, proof of unavailability demands a showing that she could not be located after reasonable efforts to find her and secure her presence.[3] "When a witness cannot be found after diligent search because they are hiding to avoid testifying, necessity has been shown. [Cit.]"[4]

It is within the sound discretion of the trial court to determine the unavailability of a witness and a party's diligence in searching for that witness.[5] This determination will not be disturbed unless a manifest abuse of discretion is shown.[6] Battle focuses his argument solely on the State's diligence in securing Jones's presence at trial. He does not challenge other aspects of admissibility under the necessity exception.

The State discovered that Jones was unavailable and began its efforts to locate her almost six months before Battle was tried. Investigators went to her Columbus home seven or eight times trying to find her or to get updated information on how she might be located. Upon learning that she had moved to Arkansas, they contacted her there and obtained assurance that she would return to Georgia to testify. When it became reasonably apparent that she did not intend to cooperate in the prosecution, the State enlisted the assistance of local Arkansas authorities and attempted to have her forcibly returned to testify. As late as the day before the evidentiary hearing, the State had not abandoned its efforts to locate Jones. In light of these facts, we find that the State exercised due diligence in searching for Jones.[7]

Battle argues that this case is analogous to *Rosser v. State*.[8] We disagree. In *Rosser*, the witness's name had never appeared on a witness list; the witness was not a confidential informant; the State did not begin to search for the witness until three or four days before the trial and then searched no more than five hours for her; and there was no evidence that the witness was hiding to avoid testifying.

Accordingly, we find no abuse of discretion in the trial court's admission of Jones's out-of-court statements.

*Judgment affirmed. Johnson, C. J., and Mikell, J., concur.*

---

[2] *Chapel v. State*, 270 Ga. 151, 155 (4) (510 SE2d 802) (1998).

[3] See *Wilbourne v. State*, 214 Ga. App. 371, 373 (2) (448 SE2d 37) (1994); *Lane v. Tift County Hosp. Auth.*, 228 Ga. App. 554, 561 (2) (492 SE2d 317) (1997).

[4] Id., citing *Adams v. State*, 191 Ga. App. 16, 17 (2) (381 SE2d 69) (1989).

[5] See *Tolbert v. State*, 239 Ga. App. 703, 704 (1) (521 SE2d 827) (1999).

[6] Id.

[7] Compare *Walton v. State*, 272 Ga. 73, 74 (3) (526 SE2d 333) (2000) (holding that the State showed due diligence in unsuccessful efforts to locate out-of-state witness).

[8] 211 Ga. App. 402 (1) (439 SE2d 72) (1993), rev'd on other grounds, *Livingston v. State*, 268 Ga. 205, 209 (1) (486 SE2d 845) (1997).

DECIDED JUNE 30, 2000.

*Worthington & Flournoy, Thomas M. Flournoy, Jr.*, for appellant.
*J. Gray Conger, District Attorney, Julia Slater, Assistant District Attorney*, for appellee.